### S99A1579. In re ESTATE OF LEANORA DIAZ.
(524 SE2d 219)

HUNSTEIN, Justice.

Leanora Diaz (Diaz) died on April 3, 1997. The evidence presented at trial shows that prior to her death she became estranged from her husband, appellant Ralph Diaz, and on October 8, 1996 served him with divorce papers. The following weekend, Diaz's children, appellants Brian Diaz, Donna Diaz Crandall, Dawn Diaz Williams and Denise Diaz Leto, visited their mother at her home and tried to convince her to seek medical attention for perceived physical and mental problems. She refused and the children called Forsyth County deputies to assist them in having their mother involuntarily committed. Diaz spoke with the deputies, then called her brother, appellee James O'Brien, in Florida. She then agreed to go to the hospital where, after being diagnosed with mild clinical depression due to the family discord and impending divorce, she was released.

Upon her release, Diaz called O'Brien. He in turn called county deputies and asked them to check on his sister. When the deputies arrived at the Diaz home, Diaz told them she did not want to see her children and asked the deputies to remove them. Thereafter, Diaz cut off all communication with her children, and although she later resumed telephone conversations, she consistently refused to see her children when they tried to visit.[1] At times, she told her children they were "Judases" for forcing her to go to the hospital and stated that she might forgive them for what they did but she would never forget.

In February 1997, Diaz called O'Brien and told him she was having physical problems. O'Brien and his wife came from Florida and took Diaz to the hospital. On February 14, 1997, Diaz was hospitalized and diagnosed with cancer. While in the hospital, Diaz asked O'Brien to have her divorce attorney draw up a power of attorney and will. On February 18, 1997, Diaz executed a power of attorney giving O'Brien authority over her business affairs and a will leaving her personal effects to O'Brien and all other property to her grandchildren. On February 27, 1997, Diaz executed a codicil expressly stating

---

[1] On one occasion in March 1997, two of her daughters tried to visit Diaz. The Sheriff's department was called and upon questioning, Diaz again told the deputies she did not want to see her children.

that after much reflection and due to recent events, her husband and children were to take nothing under the will. After her release from the hospital, Diaz refused chemotherapy treatment and was placed in hospice care in her home. From February 1997 until her death, Diaz spoke with her children on the phone a few times and saw them briefly outside her home.

Four days after Diaz's death, appellants filed an application for letters of administration in the Forsyth County Probate Court. Two of her children were named as administrators of the estate. On April 15, 1997, O'Brien filed a petition to probate the February 1997 will and codicil. Appellants objected claiming Diaz did not have sufficient mental capacity to dispose of her property and that the will and codicil were the result of O'Brien's undue influence. After a bench trial, the probate court entered an order overruling appellants' objections to the will and codicil. Appellants appeal from this order and we affirm, finding sufficient evidence to support the probate court's conclusion that Diaz possessed the necessary testamentary capacity at the time the will and codicil were executed and that these documents were executed of her own free will.

1. Appellants contend Diaz did not possess the necessary testamentary capacity to execute a will because she was suffering from cancer and disease related delusions at the time she executed the 1997 will and codicil. The right to make a will is a valuable one, and a stringent standard must be met to deprive a person of this right. *McConnell v. Moore*, 267 Ga. 839, 841 (483 SE2d 578) (1997). Accordingly, a testator will be held not to possess the mental capacity to make a will based upon delusional behavior only if the testator suffers from an insane delusion, that is a delusion having no foundation in fact and that springs from a diseased condition of mind. *Boney v. Boney*, 265 Ga. 839, 840 (462 SE2d 725) (1995); see former OCGA § 53-2-21 (b).[2]

A review of the record demonstrates that the evidence is insufficient to make a clear and convincing showing that Diaz lacked the mental capacity to dispose of her property at the time she executed her February 1997 will and codicil. During the bench trial, Diaz's doctor testified that he saw no evidence of delusions during her illness and she was coherent at each of his daily visits during the time she executed the will and codicil. He also testified that Diaz told him she was estranged from her husband and children and they were to be told nothing about her diagnosis and would have no part in her treatment. The witnesses to the signing of the will and codicil stated

---

[2] See also OCGA § 53-4-11 (a), effective January 1, 1998. Ga. L. 1996, p. 504, § 10 as amended by Ga. L. 1997, p. 1352, § 1 (testamentary capacity exists when testator has decided and rational desire as to disposition of property).

Diaz was coherent at all times while the will and codicil were being read to her, that she appeared to understand the meaning of their contents, and she did not appear to be delusional or overly medicated. Appellants' allegations of arguably irrational behavior at times other than when the will and codicil were executed do not controvert the positive testimony of her medical doctor and the subscribing witnesses that at the time the will and codicil were executed Diaz seemed to understand the effect of the will and codicil, was capable of recognizing the property she possessed and the persons related to her, and was capable of making a rational disposition of her property. See *Quarterman v. Quarterman*, 268 Ga. 807 (1) (493 SE2d 146) (1997). The record clearly supports the probate court's finding that Diaz possessed the necessary testamentary capacity at the time the will and codicil were executed.

2. Appellants also contend the will and codicil are invalid because O'Brien exerted undue influence over Diaz at the time of their execution. Appellants argue that because O'Brien lived with Diaz from February 1997 until her death, precluded appellants from talking to or visiting with Diaz, and refused to provide them with information about Diaz's physical health, there is sufficient evidence of undue influence.

Undue influence upon the testator will be found to exist only if such influence deprives the testator of her free agency and substitutes the will of another person for her own at the time the will is executed. Former OCGA § 53-2-6; see OCGA § 53-4-12; *Bohlen v. Spears*, 270 Ga. 322, 324 (1) (b) (509 SE2d 628) (1998). Evidence showing nothing more than an opportunity to influence and a substantial benefit under the will does not establish the exercise of undue influence. *Sims v. Sims*, 265 Ga. 55 (452 SE2d 761) (1995).

Because Diaz was in the final stages of cancer, there naturally was some evidence that her physical and mental health deteriorated from October 1996 until her death in April 1997. The record is devoid, however, of any evidence that at the time Diaz executed her 1997 will and codicil she did not act of her own free will. To the contrary, the subscribing witnesses testified that Diaz voluntarily signed the will and codicil after they were read to her in their entirety and that she was talkative and polite at the time. Appellants themselves testified that Diaz was a strong-willed woman whose will was not easily overridden, that as early as October 1996 Diaz refused to discuss her physical condition with them, and after the attempted involuntary committal she independently cut off virtually all communication with them. Thus, the evidence shows at most an opportunity for O'Brien to exert undue influence over Diaz and not the requisite clear and convincing evidence that the will and codicil were the result of O'Brien's undue influence. Appellants' suspicions of undue

influence cannot be allowed to supplant direct evidence on the issue. See *McConnell*, 267 Ga. at 841.

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 22, 1999.

*Clifford H. Hardwick,* for appellants.
*James C. Brown*, for appellee.