## S01A0967. HARPER v. HARPER.
### (554 SE2d 454)

CARLEY, Justice.

Denver Harper (Testator) devised and bequeathed the majority of his estate to Russell Harper, Sr. (Propounder), who was only one of his three surviving sons. A disinherited son, Travis Harper (Caveator), filed a caveat to the will. Caveator contended that Propounder's son, Russell Harper, Jr. (Grandson), misled his grandfather into believing that Caveator stole a large sum of money which Testator had buried in his yard. According to Caveator, Testator, upon hearing from Grandson that Caveator purchased several tractor-trailer trucks, erroneously concluded that Caveator was the thief and, therefore, rewrote the will so as to benefit Propounder.

---

By consent of both parties, an immediate appeal was taken to the superior court. See *Brown v. Anderson*, 13 Ga. 171, 172 (4) (1853). After extensive discovery, the superior court granted summary judgment in favor of Propounder. Caveator appeals from that order.

1. " 'Because "(t)he right to make a will is a valuable right," a stringent standard must be met to deprive a person of this power. (Cit.)' [Cit.]" *McConnell v. Moore*, 267 Ga. 839, 841 (483 SE2d 578) (1997). Caveator urges that such standard is met here, and that a genuine issue of material fact remains as to the invalidity of the will based upon either fraud or undue influence. "[F]raud wilfully deceives free agency, while undue influence overmasters it." 79 AmJur2d, Wills, § 410, p. 564. " 'Fraud sufficient to invalidate a will exists only when it is shown that the testator relied on the misrepresentation and was deceived.' [Cits.]" *Slade v. Slade*, 155 Ga. 851, 863 (3) (118 SE 645) (1923). "Influence is undue 'only when it constrains or coerces a person into doing that which his best judgment tells him not to do and deprives him of his free agency and substitutes the will of another person for his own.' [Cit.]" *Sims v. Sims*, 265 Ga. 55, 56 (452 SE2d 761) (1995).

The superior court concluded that Caveator could prevail only if Propounder himself personally defrauded or unduly influenced Testator. However, a will is invalid

> if *anything* destroys the testator's freedom of volition, such as fraudulent practices upon the testator's fears, affections, or sympathies; misrepresentations; . . . or undue influence whereby the will of *another* is substituted for the wishes of the testator.

(Emphasis supplied.) OCGA § 53-4-12. Thus, there is no express statutory requirement that the invalidating fraud or undue influence be directly attributable to the beneficiary or propounder. The general rule is that

> [t]here is no restriction as to those who may be shown to have exercised undue influence on a testator. . . . The undue influence in the execution of a will which will invalidate it may be that of a third person, as well as of a beneficiary. . . . [T]he absence of volition on the part of the testator means absence without reference to whether or not the party who influenced him benefits by the will or is the agent of a beneficiary. . . . A will may be invalidated because of undue influence of which the beneficiary was entirely ignorant.

79 AmJur2d, Wills, § 394, p. 553. Thus, the superior court erred in

concluding that evidence of deceptive practices or undue influence practiced by anyone other than Propounder was irrelevant. Summary judgment was proper only if, construing the evidence most favorably for Caveator, no genuine issue of material fact remains as to whether Testator's will was the product of fraud or undue influence from any source, including Grandson as well as Propounder.

2. Propounder produced evidence negating the existence of fraud or undue influence on his own part, and the burden thus shifted to Caveator to show that a genuine issue of material fact remained in that regard. Because there is no direct or circumstantial evidence of any fraudulent misrepresentations made by Propounder to Testator, summary judgment was proper as to that theory. Caveator urges, however, that the evidence is sufficient to show Propounder's exercise of undue influence.

Testator's choice of Propounder rather than another as the favored beneficiary is an insufficient reason alone to deny probate. *Cornelius v. Crosby*, 243 Ga. 26, 28 (5) (252 SE2d 455) (1979). According to Caveator, however, Propounder had a confidential relationship with Testator, so that a presumption of undue influence arises. See *Tingle v. Harvill*, 228 Ga. 332, 339-340 (5) (185 SE2d 539) (1971). Testator did place a general trust and confidence in Propounder, but that is not sufficient to trigger the rebuttable presumption that undue influence was exercised. *King v. Young*, 222 Ga. 464, 467 (150 SE2d 631) (1966). The uncontroverted evidence shows that Propounder played no part in Testator's decision to change his will. Construing the evidence most strongly for Caveator, a jury would not be authorized to find the existence of a confidential relationship wherein Propounder was "so situated as to exercise a controlling influence over the will" of Testator. OCGA § 23-2-58. Moreover, even assuming that a genuine issue of fact remained as to the existence of the confidential relationship contemplated by OCGA § 23-2-58, the evidence still would not support a finding of undue influence on the part of Propounder.

> "[I]t is insufficient to show merely that the persons receiving substantial benefits under the instrument sought to be propounded occupied a confidential relationship to the testator and had an opportunity to exert undue influence. The indulgence of mere suspicion of undue influence cannot be allowed. Even evidence of undue influence over the mind and will of the testator at another time will not invalidate a will." (Cit.) [Cit.]

*McGee v. Ingram*, 264 Ga. 649, 650 (1) (448 SE2d 439) (1994). As there is no evidence to counter Propounder's showing that he did not

exercise undue influence over his father, the trial court correctly granted summary judgment in his favor on that theory of recovery as well. *McConnell v. Moore*, supra at 841.

3. Caveator asserts that a genuine issue of material fact remains as to Grandson's fraud. Several witnesses testified as to what Testator told them that Grandson told him about Caveator and the purchase of trucks. Caveator's reliance on that evidence is misplaced.

> [T]he declarations of a testator, where the issue is of fraud or undue influence in the execution of a will, are not admissible to prove the actual fact of fraud or the exercise of an improper influence by another. . . . As to the facts themselves, such declarations amount to no more than hearsay evidence; and to permit a person to destroy, annul and revoke a will voluntarily and solemnly executed, by mere oral declaration contrary to the testamentary scheme expressly declared in a written instrument, is to overturn and destroy one of the most salutary of the elementary rules of evidence.

*Mallery v. Young*, 94 Ga. 804, 807-808 (22 SE 142) (1894). A testator's declarations are admissible to show the validity of a will, but not the invalidity of the instrument. *Jones v. Grogan*, 98 Ga. 552, 557 (7) (25 SE 590) (1896). See also *Heard v. Lovett*, 273 Ga. 111, 112 (2) (538 SE2d 434) (2000) (hearsay statements of testator admissible to support validity of will attacked as forgery).

The only probative evidence of Grandson's statement is his acknowledgment that he informed his grandfather that Propounder "had two new Peterbilts. . . . The ID numbers . . . were in [numerical] order. . . . I don't know how he paid for them. . . ." The record shows two new trucks matching that description were bought in September of 1997, but Caveator contends that the information provided Testator was fraudulent because he was not the purchaser. The buyer was "Annette's Auto Transport, Inc.," which is the trucking business of Caveator's wife, and her signature appears on the bills of sale. However, any mischaracterization as to title and the identity of the actual purchaser would be immaterial here, as the essential truth remained that two new trucks had been bought and that Caveator would presumably benefit from their purchase. Fraud consists of a "[w]illful misrepresentation of a material fact. . . ." OCGA § 51-6-2 (a). There is nothing to suggest that Grandson's statement regarding the identity of the actual purchaser of the trucks was a willful misrepresentation or that, had Testator known that the trucks were actually purchased in the name of his daughter-in-law, his response to the information would have been any different. While Caveator

had an indirect, rather than direct, connection with the trucks, the materiality of Grandson's statement lay in the existence of some connection between Caveator and the vehicles and the information provided to Testator was not so willfully incorrect as to constitute a fraudulent misrepresentation.

Caveator further contends that Grandson's statement was fraudulent because Testator's money was last buried some time after the trucks were bought and, thus, presumably could not have been the source of funds for their purchase. However, Grandson did not tell Testator when the trucks were purchased, and he did not accuse Caveator of stealing the money. Caveator also urges that Grandson committed fraud because the trucks were financed and not bought with cash. However, Grandson did not claim to know how the trucks were paid for, and he never informed Testator that Caveator paid cash for them. Moreover, neither the date of purchase nor the manner of original payment negates the possibility that the money was stolen subsequently so as to fund the eventual pay-off of the financed trucks. Thus, the failure to inform Testator of when the trucks were bought or how they were purchased could not be material to his ultimate conclusion that Caveator stole the cash. Construing all of the evidence most strongly in favor of Caveator, Grandson provided essentially truthful information and Testator simply leapt to the erroneous conclusion that Caveator was the thief. At most, this shows a mistake of fact on the part of Testator. Under OCGA § 53-4-58, which controls here, the only mistake affecting a will is the testator's erroneous belief that a child is dead. Even under the prior law, former OCGA § 53-2-8, Caveator still could not recover, as the evidence shows that, after hearing from Grandson, Testator had an ample opportunity to make his own investigation into the matter and, indeed, uniformly rejected numerous protestations by relatives of Caveator's innocence. *Yancey v. Hall*, 265 Ga. 466, 469 (4) (458 SE2d 121) (1995). Compare *Skelton v. Skelton*, 251 Ga. 631, 633 (4) (308 SE2d 838) (1983).

4. Caveator asserts that a genuine issue of material fact remains as to Grandson's undue influence. The evidence shows that, when he executed the will, Testator was of sound mind and that he signed the instrument freely and voluntarily. Thus, to withstand Propounder's motion for summary judgment, Caveator had to show more than a mere opportunity for Grandson to exert undue influence. *Brumbelow v. Hopkins*, 197 Ga. 247 (3) (29 SE2d 42) (1944). Testator was elderly and in failing health, but "[n]either advancing age nor weakness of intellect nor eccentricity of habit or thought is inconsistent with the capacity to make a will." OCGA § 53-4-11 (d). There is no evidence that Grandson ever encouraged Testator to change his will or that he arranged for the execution of the new instrument. Instead, Testator

called his attorney of long-standing, and he himself directed that a new will be drawn. Grandson was merely the conduit through whom Testator learned of the purchase of the two trucks. Although Grandson drove Testator to the law office, the drafting attorney testified that Grandson "did not participate in any substantive discussion of contents of the will." Grandson's provision of transportation for his elderly grandfather, without more, "is not evidence of his undue influence over [Testator], since it is undisputed that on no occasion did he take an active part in any testamentary planning or the execution of the will itself." *McConnell v. Moore*, supra at 840. " ' "The indulgence of mere suspicion of undue influence cannot be allowed. . . ." ' [Cit.]" *Kendrick-Owens v. Clanton*, 271 Ga. 731, 733 (524 SE2d 237) (1999). Construing the evidence most favorably for Caveator, he did not rebut the evidence that Testator acted of his own free will, and the superior court correctly granted summary judgment allowing probate of the will.

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 22, 2001 —
RECONSIDERATION DENIED DECEMBER 3, 2001.

*Alton M. Adams*, for appellant.
*Clifton, Sanders & Smith, Janney E. Sanders*, for appellee.