S06A0617, S06X0618. BAILEY v. EDMUNDSON; and vice versa.

(630 SE2d 396)

CARLEY, Justice.

On October 20, 2003, Raymond Patrick Cudworth (Testator) executed a will naming his only child, Heather Bailey, as executrix and primary beneficiary. He was diagnosed with lung cancer and, on June 18, 2004 after suffering a stroke, with terminal brain cancer. Donna Price and Barry Palleson, whom Testator met at a church which he had recently begun attending, were hired to care for him. Michael Edmundson, who was on the staff of the same church, regularly visited Testator, and baptized him in early July. On August 20, 2004, Testator executed a will naming his sister Linda Huynh as executrix and Edmundson as successor executor. That will made specific bequests to the church and to several individuals, including Ms. Price, Palleson, and Edmundson, and left 75% of the residue of the estate to Ms. Huynh and 25% to Ms. Bailey.

Testator died on September 9, 2004. Thereafter, Ms. Bailey filed the 2003 will for probate, and Edmundson filed a petition to probate the 2004 will. Ms. Huynh renounced her right to serve as executrix under the 2004 will, and Ms. Bailey filed a caveat to Edmundson's petition and demanded a jury trial. She alleged that Testator lacked testamentary capacity, suffered from monomania, did not read the 2004 will and know its contents, and was unduly influenced by Ms. Price, Palleson, and Edmundson. At the trial, Ms. Bailey stipulated to the prima facie case of execution of the 2004 will and assumed the burden of going forward.

The jury returned a verdict in favor of Ms. Bailey on the sole ground of undue influence. The trial court granted a renewed motion for directed verdict in favor of Edmundson, and entered judgment accordingly, concluding that Ms. Price, Palleson, and Edmundson had, "at most, the opportunity to influence the testator. Evidence that the testator placed confidence in these individuals, relied upon them, and sometimes took their direction, showed at most an opportunity to influence him . . . ." Ms. Bailey has appealed in Case Number S06A0617, and Edmundson has filed a defensive cross-appeal in Case Number S06X0618.

*Case Number S06A0617*

1. Ms. Bailey contends that the trial court erred in entering a directed verdict, because she presented significant evidence at trial from which the jury could and did find that the 2004 will was the product of undue influence. Under OCGA § 9-11-50 (a), "a directed verdict is authorized only when 'there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict.' [Cits.]" *Dyer v. Souther*, 272 Ga. 263, 265 (2) (528 SE2d 242) (2000). In particular, "the question of whether a will is the product of undue influence is generally for the factfinder. [Cit.]" *Cook v. Huff*, 274 Ga. 186-187 (1) (552 SE2d 83) (2001).

A rebuttable presumption of undue influence arises when a beneficiary under a will occupies a confidential relationship with the testator, is not the natural object of his bounty, and takes an active part in the planning, preparation, or execution of the will. *McConnell v. Moore,* 267 Ga. 839, 840 (483 SE2d 578) (1997). Shortly before execution of the 2004 will, Ms. Price contacted her own attorney, wrote out an agenda for the first meeting at Testator's home, participated in the meeting along with Palleson, and assisted Testator in writing the check to pay the attorney. On the day between that meeting and execution of the will, the attorney e-mailed the will and other documents to Testator. Palleson printed the documents, reviewed them with Testator, and made three or four telephone calls to the attorney's office. As a result, the name of Ms. Bailey's husband was misspelled and a new bequest of a van to Palleson was added to the will. Thus, the evidence showed that Testator's care givers were actively involved in almost every aspect of the procurement of the 2004 will.

Furthermore, there was some evidence of a confidential relationship, which is generally a question for the trier of fact. *Trotman v. Forrester*, 279 Ga. 844, 845 (621 SE2d 724) (2005). Under OCGA § 23-2-58, a "confidential relationship is one 'where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another. . . .' [Cit.]" *White v. Regions Bank*, 275 Ga. 38, 39 (1) (561 SE2d 806) (2002). "A confidential relationship may be found to exist when the evidence shows that a party was capable of exerting power of leadership or a controlling influence over a submissive testator. [Cit.]" *Trotman v. Forrester,* supra. The oncologist who treated the Testator testified by deposition that his medication could cause altered mental status and occasional psychosis. Other testimony showed that, although Testator had a strong personality,

during the summer of 2004 he suffered from severe physical inabilities, memory impairment, and mental confusion. The evidence presented by Ms. Bailey also showed that Testator, in the hope of helping himself go to heaven, made gifts and loans to Ms. Price, Palleson, and Edmundson; that Testator was dependent on his care givers for personal and medical care; that he was afraid that they would quit and that his daughter would put him into a nursing home; and, that because of them he stopped permitting her to visit him. To the extent that the latter evidence consisted of Testator's declarations, it was nevertheless admissible. " 'The declarations of a testator, where the issue is of fraud or undue influence in the execution of a will, are not admissible to prove the actual fact of fraud or the exercise of an improper influence by another. . . .' [Cit.]" *Harper v. Harper*, 274 Ga. 542, 545 (3) (554 SE2d 454) (2001). However, such declarations are admissible "for the purpose of showing the state of the testator's mind, and that he was in a condition to be easily influenced. [Cits.]" *Reid v. Wilson*, 208 Ga. 235, 237 (3) (65 SE2d 913) (1951).

> While the attorney who prepared the documents for the [T]estator and the two persons who witnessed [his] execution of the documents testified that [he] showed no signs of mental impairment at the time of execution, inasmuch as there was some evidence from which the jury could conclude that [he] might be subjected to [Edmundson's and the care givers'] power of leadership . . . , there was some evidence of the existence of a confidential relationship that could trigger the rebuttable presumption [of undue influence] . . . .

*White v. Regions Bank*, supra at 40 (1). Compare *Harper v. Harper*, supra at 544 (2). Because that presumption does not vanish in the face of evidence contrary to the presumed fact, it alone is sufficient to support the jury's finding as to undue influence. *Baker v. Baker*, 280 Ga. 299 (627 SE2d 26) (2006).

Moreover, even if there was not sufficient evidence of a confidential relationship, the verdict of undue influence was nevertheless authorized. "Undue influence 'may take many forms and may operate through diverse channels. (Cit.)' [Cit.]" *Cook v. Huff*, supra at 187 (1). There is no requirement that the undue influence be directly attributable to the propounder or to a single beneficiary. See *Harper v. Harper*, supra at 543 (1). Although evidence which merely shows an opportunity to influence is not itself sufficient, a "caveat based upon the ground of undue influence may be supported by a wide range of evidence, as such influence can seldom be shown except by circumstantial evidence. [Cits.]" *Sullivan v. Sullivan*, 273 Ga. 130, 132 (3) (539 SE2d 120) (2000).

"[A]n attack on a will as having been obtained by undue influence may be supported by . . . testimony . . . (of) a confidential relation between the parties, the reasonableness or unreasonableness of the disposition of the testator's estate, old age, or disease affecting the strength of the mind, tending to support any other direct testimony or any other proved fact or circumstance going to show the exercise of undue influence on the mind and will of the testator. . . . While the quantity of influence varies with the circumstances of each case, according to the relations existing between the parties and the strength or weakness of mind of the testator, the amount of influence necessary to dominate a mind impaired by age or disease may be decidedly less than that required to control a strong mind. (Cits.)" [Cits.]

*Dyer v. Souther*, supra at 264-265 (2).

The evidence presented by Ms. Bailey proved Testator's disease, medication, and its effects, his dependence on the care givers, their isolation of him from Ms. Bailey, their active encouragement and arrangements for the drafting and execution of a new will, Testator's short-term relationship with them, his sporadic contact with and lack of trust towards Ms. Huynh, and his long-standing expressions of testamentary intent to leave all of his property to Ms. Bailey, which he repeated the day after execution. *Cook v. Huff*, supra. Compare *Curry v. Sutherland*, 279 Ga. 489, 491 (2) (614 SE2d 756) (2005); *Harper v. Harper*, supra at 546 (4) ("no evidence that [alleged influencer] ever encouraged Testator to change his will or that he arranged for the execution of the new instrument").

Although this evidence did not demand a finding that the will was the product of . . . undue influence, it was sufficient to authorize the submission of that question to the jury. [Cits.] Because the evidence did not demand a contrary verdict to that returned by the jury's verdict in favor of [Ms. Bailey], the trial court [erroneously granted Edmundson's renewed] motion[ ] for directed verdict . . . .

*Cook v. Huff*, supra at 188 (1). See also *Jones v. Sperau*, 275 Ga. 213, 214 (1) (563 SE2d 863) (2002). Compare *In re Estate of Diaz*, 271 Ga. 742, 744 (2) (524 SE2d 219) (1999) (affirming judgment entered on a probate court's finding that a will and codicil were not the result of undue influence). Accordingly, we reverse the judgment of the trial court in the direct appeal and, thus, are required to consider the cross-appeal.

*Case Number S06X0618*

2. The trial court ruled that Ms. Bailey had the right to open and conclude argument because she admitted, just prior to trial, that the self-proving affidavit attached to the instrument propounded by Edmundson established a prima facie case. See *Singelman v. Singelmann*, 273 Ga. 894, 896 (1) (548 SE2d 343) (2001). Edmundson contends that, just as he cannot be required to accept individual stipulations of fact, the trial court erred by forcing him to accept the admission of a prima facie case. Where the burden of proof rests with the plaintiff in a civil action, he "is entitled to the opening and concluding arguments except that if the defendant introduces no evidence *or admits a prima-facie case*, the defendant shall be *entitled* to open and conclude." (Emphasis supplied.) OCGA § 9-10-186. See also Uniform Probate Court Rule 11.2. More specifically, it has long been the law in Georgia that, even over an objection by the propounder, a caveator to the probate of a will can admit a prima facie case in the propounder's favor, present evidence in support of the caveat, and have the right to opening and concluding argument. *Skelton v. Skelton*, 251 Ga. 631, 632 (3) (308 SE2d 838) (1983); *Yarbrough v. Yarbrough*, 202 Ga. 391, 396 (1) (43 SE2d 329) (1947); *Wood v. Davis*, 161 Ga. 690, 698 (4) (131 SE 885) (1926). Thus, the trial court correctly permitted Ms. Bailey to exercise this important right.

3. Pursuant to OCGA § 24-3-18, the trial court admitted a medical narrative prepared by Testator's oncologist. See *Bell v. Austin*, 278 Ga. 844 (607 SE2d 569) (2005). Edmundson urges that the statements in the narrative that two drugs taken by Testator "can cause" altered mental status and agitation were not relevant to the issue of whether he actually suffered from those side effects. However, expert medical testimony as to the mere possibility of a causal relationship between a given occurrence and a subsequent mental condition, although not sufficient to sustain a burden of proof, is nevertheless clearly admissible. *Jacobs v. Pilgrim*, 186 Ga. App. 260, 262 (1) (367 SE2d 49) (1988). See also *Hodson v. Mawson*, 227 Ga. App. 490, 492 (4) (489 SE2d 855) (1997). The expert's opinion, when accompanied by other competent expert or lay testimony on the same issue, "need not attain any particular level of confidence or certainty in order to be admitted and it is for the jury to decide whether the expert's opinion, together with the other evidence, meets a party's burden of proof on the issue. [Cits.]" Milich, Ga. Rules of Evidence § 15.6, p. 301 (2nd ed. 2002). Accordingly, the oncologist's opinion, when considered along with other evidence of Testator's mental impairment and weakness after being prescribed the drugs, was relevant in determining the amount of influence necessary to dominate his mind and destroy his free agency and willpower.

4. The trial court excluded as hearsay messages which employees of Testator's oncologist wrote as a result of speaking with Ms. Bailey by telephone. Edmundson enumerates this ruling as error, asserting that, by way of the business records exception to the hearsay rule, the statements of Ms. Bailey contained in those messages should have been allowed into evidence as party admissions pursuant to OCGA § 24-3-31 or, in the alternative, as evidence of her conduct and motives under OCGA § 24-3-2. Assuming that either of these code sections applies to Ms. Bailey's statements over the phone, the written record or summary of those statements must come within the business records exception in order to be admissible. That hearsay exception applies only to "a memorandum or record of any act, transaction, occurrence, or event" offered "in proof of the act, transaction, occurrence, or event . . . ." OCGA § 24-3-14 (b). "[E]vidence admitted under the business records exception should be 'routine facts' whose accuracy is not affected by 'bias, judgment, and memory.' [Cit.]" *Brown v. State*, 274 Ga. 31, 33 (1) (549 SE2d 107) (2001). As the telephone messages here "noted the contents of a conversation, not an act, transaction, occurrence, or event, the business records exception to the hearsay rule was inapplicable. [Cit.]" *Mitchell v. State*, 254 Ga. 353, 355 (5) (a) (329 SE2d 481) (1985). See also *White v. Regions Bank*, supra at 41 (2) (b). For the contents of Ms. Bailey's telephone conversations to be admissible, she would have to be given the opportunity to cross-examine the employees to whom she spoke, with regard to the potential for misrepresenting her statements.

5. Edmundson contends that the trial court erred in failing to strike the testimony of a geriatric psychiatrist called by Ms. Bailey. Prior to the testimony, but after trial had begun, Edmundson requested a hearing to determine whether the expert testimony would satisfy the requirements of OCGA § 24-9-67.1 (a), (b). The trial court correctly denied that request, since such a hearing and the ruling thereon "shall be completed no later than the final pretrial conference contemplated under [OCGA §] 9-11-16." OCGA § 24-9-67.1 (d). Edmundson did not make any objections during the psychiatrist's testimony. After the expert finished testifying and the jury was excused for the day, Edmundson moved to strike the entirety of the testimony. Assuming that the untimeliness of Edmundson's request for a hearing did not waive the particular grounds asserted in his motion to strike, he nevertheless waived all remaining objections to the expert testimony by failing to object contemporaneously. *Sharpe v. Dept. of Transp.*, 267 Ga. 267, 271 (2) (476 SE2d 722) (1996). See also *McCannon v. State*, 268 Ga. 393, 395 (5) (489 SE2d 801) (1997); *Crosby v. Cooper Tire & Rubber Co.*, 240 Ga. App. 857, 858 (1) (a) (524

SE2d 313) (1999), rev'd on other grounds, 273 Ga. 454 (543 SE2d 21) (2001); *Dept. of Transp. v. Wallace Enterprises*, 234 Ga. App. 1, 4 (5) (505 SE2d 549) (1998).

6. Edmundson further contends that the trial court erroneously prevented him from cross-examining Ms. Bailey regarding her financial interest in the case. Specifically, he sought to elicit testimony as to the amount of attorney's fees which she owes and her ability to pay them without a successful result at trial. "The general rule is that evidence of the wealth or worldly circumstances of a party litigant is never admissible, except in those cases where position or wealth is necessarily involved. [Cits.]" *Northwestern Univ. v. Crisp*, 211 Ga. 636, 641 (2) (88 SE2d 26) (1955). One party's need for money is irrelevant in most cases. Green, Ga. Law of Evidence § 74, p. 161 (5th ed. 1999). In this case testimony regarding the amount of attorney's fees and their effect on Ms. Bailey's current and post-trial financial condition was irrelevant, as it had no tendency to illustrate the absence of undue influence or any other contested question. See *Northwestern Univ. v. Crisp*, supra (caveator's assets irrelevant). Compare *Oxford v. Oxford*, 136 Ga. 589, 590 (1) (71 SE 883) (1911) (where caveators' financial condition was admissible to illustrate the reasonableness or unreasonableness of the testamentary scheme). Thus, the trial court did not abuse its discretion in limiting the cross-examination of Ms. Bailey. See *Sims v. Heath*, 258 Ga. App. 681, 685 (5) (577 SE2d 789) (2002).

7. The giving of several allegedly improper jury instructions on undue influence is also enumerated as error. Edmundson argues that certain charges did not reflect the current state of the law or conform to the evidence, and that one charge deviated from the pattern jury instructions. There is no requirement that only verbatim pattern charges are permissible. *Scott v. State*, 274 Ga. 153, 154 (2) (549 SE2d 338) (2001); *Pope v. Goodgame*, 223 Ga. App. 672, 675 (3) (b) (478 SE2d 636) (1996). Edmundson does not explain how any specific charge fails to state the law accurately or to conform to the evidence. He further makes only a general argument that the instructions on undue influence were confusing and, because of their redundancy, overemphasized the issue. Nevertheless, we have reviewed the jury charge as a whole and have not found any error. See *Lewis v. State*, 279 Ga. 756, 763 (8) (620 SE2d 778) (2005); *Sheppard v. Broome*, 214 Ga. 659 (107 SE2d 219) (1959).

*Judgment reversed in Case No. S06A0617. Judgment affirmed in Case No. S06X0618. All the Justices concur.*

DECIDED MAY 17, 2006.

*Spears & Spears, Malane T. Spears, John W. Spears, Jr.*, for appellant.

*Andrew, Merritt, Reilly & Smith, Michael T. Smith, Raymon D. Burns, Robert W. Hughes, Jr.*, for appellee.