MELTON, Justice.
 

 These multiple appeals arise from a jury verdict in favor of Artumus Gibson, as the surviving spouse and Administrator of his wife's estate (hereinafter collectively "Gibson"), against William Burns, Ford Motor Company ("Ford"), and Draw-Tite, Inc. ("Draw-Tite"), in connection with a car accident that resulted in his wife's death. In Case No. S07A1365, Ford challenges the trial court's order requiring Ford to produce certain crash-test documents during discovery and the subsequent sanctions imposed by the trial court in connection with Ford's failure to produce these documents; the trial court's
 

 **399
 

 conclusion that Gibson's claims survived Georgia's statute of repose (OCGA § 51-1-11); the jury's verdict on Gibson's failure-to-warn claim; and the trial court's charge on proximate cause. In Case No. S07A1367, Draw-Tite contends that the trial court erred in ruling that OCGA § 24-9-67.1 (admissibility of scientific expert opinion testimony in civil actions) was unconstitutional as applied in this case; improperly applied the "enhanced injury" doctrine at trial; erred in denying Draw-Tite's motion for judgment notwithstanding the verdict; and improperly allowed the rehabilitation of biased jurors. In cross appeals S07X1368 and S07X1389, Gibson appeals the trial court's grant of partial summary judgment to Draw-Tite on Gibson's design-defect and punitive-damages claims. For the reasons that follow, we affirm in Case No. S07A1365, affirm in part and vacate in part in Case No. S07A1367, and dismiss cross appeals S07X1368 and S07X1389.
 

 Viewed in the light most favorable to the jury's verdict, the record reveals that, on February 12, 1999, Burns drove a Toyota truck into the back of a 1985 Mercury Marquis
 
 *349
 
 being driven by Anne Marie Gibson. At the time of the accident, Burns was driving fifty to sixty miles per hour, and Ms. Gibson's car, preparing to make a left turn, was at a complete stop. The collision forced Ms. Gibson's car into oncoming traffic, where it was hit by another truck. A trailer hitch manufactured by Draw-Tite was attached to the rear of Ms. Gibson's car by two bolts, and the sharp ends of the two bolts were facing the fuel tank located behind the rear axle of the car. The force of the impact from the collisions thrust the two bolts through the fuel tank of Ms. Gibson's car, and the doors of the car jammed shut during the collisions. A post-collision fire erupted, and the fuel tank of Ms. Gibson's car exploded. Ms. Gibson's seat back collapsed, pulling her head into the flames that had erupted in the back seat of her car. Rescuers eventually unjammed Ms. Gibson's car door and retrieved her from the vehicle, but she died at the scene due to her exposure to the fire and from smoke inhalation.
 

 Ms. Gibson's husband sued Burns, Ford, and Draw-Tite in connection with his wife's death. With respect to Ford, Gibson claimed that the Mercury Marquis' fuel system was defectively designed due to its location behind the car's rear axle; that the driver's seat back and the car doors were defectively designed; and that Ford wrongfully failed to warn Ms. Gibson of these defects that, combined with the dangerous hitch from Draw-Tite, ultimately caused the fuel tank explosion and other events that led to Ms. Gibson's death. Gibson made several products-liability claims against Draw-Tite for its allegedly defective trailer hitch, and claimed that Draw-Tite failed to
 

 **400
 

 warn Ms. Gibson about the dangers of its hitch - dangers of which Draw-Tite allegedly had knowledge.
 
 [1]
 
 Gibson claimed that Burns was liable for negligence.
 

 During discovery, Gibson made several requests for documents relating to Ford's rear crash testing of bumper fuel tank car designs and tests relating to seat back performance.
 
 [2]
 
 Ford refused to produce certain crash test documents relating to prior litigation, claiming that they were attorney work product.
 
 [3]
 
 The trial court found that Gibson had established a substantial need for the documents and that a substantial equivalent of the documents could not otherwise be obtained without undue hardship, and, after an in camera review, ordered Ford to produce the documents. Ford, however, still refused. Ford invited the trial court to find it in contempt for failing to produce the documents so that it could immediately appeal. Instead of finding Ford in contempt, however, the trial court, finding Ford's excuse for non-compliance with its orders to be "unreasonable," opted to sanction Ford by precluding it from contesting certain issues at trial. Specifically, the court ordered that
 

 [t]he following facts shall be taken as established for purposes of this action and Ford Motor Company will be precluded from contesting: (1) that Ford Motor Company defectively designed the fuel system and seats on the subject vehicle; (2) that the fuel system and seats were susceptible to failure in rear impact collisions; (3) that the acts and omissions of Ford Motor Company in connection with the design, manufacture and sale of the fuel system and seats of the subject vehicle [met the exception to the statute of repose, OCGA § 51-1-11(c), in that they] amount to a willful, reckless, or wanton disregard for life or property;
 
 [4]
 
 and (4)
 

 **401
 

 that Ford
 
 *350
 
 Motor Company failed to adequately warn consumers, including Mrs. Gibson, of these dangers.
 

 Following the trial, the jury found in favor of Gibson and against Ford and Draw-Tite jointly and severally on all liability claims, awarding $13 million in compensatory damages. As to Burns, the jury found in favor of Gibson on his negligence claim, but also found that Burns had demonstrated a rational basis to apportion damages in light of the product failures during the accident. The jury thus limited Burns' share of the damages to $5,000. The jury rejected Gibson's claim for punitive damages against Ford.
 

 Case No. S07A1365
 

 1. Ford argues that the trial court erred by ordering the production of crash-test documents relating to prior litigation, as such documents, created at the request of Ford's attorneys, constituted attorney work product, and Gibson had not shown a substantial need for the documents and undue hardship if he were required to obtain a substantial equivalent of the documents by other means. See OCGA § 9-11-26(b)(3). Although it is true that OCGA § 9-11-26(b)(3) permits the discovery of documents prepared in anticipation of litigation only in carefully limited circumstances (
 
 McKinnon v. Smock,
 

 264 Ga. 375
 
 (2),
 
 445 S.E.2d 526
 
 (1994)), we must also be mindful of the fact that this Court is a court of review, and we "will not reverse a trial court's decision on discovery matters absent a clear abuse of discretion." (Citations and punctuation omitted.)
 
 Ambassador College v. Goetzke,
 

 244 Ga. 322
 
 , 323(1),
 
 260 S.E.2d 27
 
 (1979). Further, where a party seeking trial preparation material affirmatively "show[s] to the satisfaction of the trial court a substantial need for the evidence and that undue hardship will result should the seeking party be required to develop the evidence by other means, the trial court may order the production of the material following an in camera examination."
 
 McKinnon,
 
 supra,
 
 264 Ga. at 376
 
 (2),
 
 445 S.E.2d 526
 
 .
 

 Here, the trial court was satisfied that Gibson had shown a substantial need for the requested documents. Specifically, the requested evidence documented past car-to-car crash tests conducted by Ford on a line of vehicles that included the Mercury Marquis, and that had similar fuel tank locations and performance as the Mercury Marquis driven by Ms. Gibson at the time of the incident involving Burns' car. As evidence that could have shown Ford's prior, direct knowledge of fuel system, car door, and seat back design problems in
 

 **402
 

 car-to-car collisions such as the one that resulted in Ms. Gibson's death, we cannot say that the trial court clearly abused its discretion in concluding that Gibson had a substantial need for these documents. See
 
 Atlantic Coast Line R.R. Co. v. Daugherty,
 

 111 Ga.App. 144
 
 , 158(3)(b),
 
 141 S.E.2d 112
 
 (1965) (showing of substantial need "should be such as to lead the court to a conclusion that it is only by allowing discovery that a manifest injustice can be averted"). Further, we find no abuse of discretion in the trial court's conclusion that Gibson could not obtain the substantial equivalent of the crash tests absent undue hardship. Indeed, after Ms. Gibson's accident, Gibson could not generate rear car-to-car crash tests that would have established Ford's
 
 prior
 
 knowledge of dangers presented by its 1985 Mercury Marquis in rear car-to-car crashes. Moreover, prior to ordering production of the documents, the trial court conducted an in camera review of the crash tests in order to ensure against the disclosure of mental impressions, conclusions, opinions, or legal theories of Ford's attorneys.
 
 McKinnon,
 
 supra,
 
 264 Ga. at 376
 
 (2),
 
 445 S.E.2d 526
 
 . Under these circumstances, we conclude that the trial court did not clearly abuse its discretion in ordering the production of Ford's prior car-to-car crash tests.
 

 2. The trial court also did not abuse its discretion in precluding Ford from contesting certain issues at trial based on its failure to follow the court's order to produce the crash tests. The trial court held a hearing in which Ford had the opportunity to explain its continued refusal to produce the
 
 *351
 
 documents.
 
 Tenet Healthcare Corp. v. Louisiana Forum Corp.,
 

 273 Ga. 206
 
 , 211(3),
 
 538 S.E.2d 441
 
 (2000) ("Before imposing the ultimate sanction of dismissal or default judgment for failure to comply with discovery, the trial court must first determine, following notice and an opportunity to be heard, that the party's failure to comply with the order granting the motion to compel was wilful") (footnote and citation omitted). By refusing to produce the crash tests after having been expressly ordered to do so, Ford ran the risk of having a default judgment entered against it. OCGA § 9-11-37(b)(2)(C). The trial court did not abuse its discretion where, in light of its conclusion that Ford had wilfully disobeyed its prior discovery order, the court could have imposed the ultimate sanction of default but instead opted for the lesser sanction of issue preclusion. Compare OCGA § 9-11-37(b)(2)(C) with OCGA §§ 9-11-37(b)(2)(A) & (B).
 
 [5]
 

 **403
 

 3. Ford argues that it was entitled to judgment as a matter of law on Gibson's failure-to-warn claims because Ford's failure to warn Ms. Gibson regarding the dangers presented by the Mercury Marquis fuel system, seat backs, and door frame was not the proximate cause of her injuries. However, as there exists some evidence from which a jury could conclude that Ms. Gibson was unaware of (and could not have obviously known about) the potential dangers posed by the Marquis, that Ford was aware of the dangers and failed to adequately warn Ms. Gibson of them, and that the very dangers of which Ford failed to warn Ms. Gibson came to fruition during the car accident that ultimately killed her, this argument is without merit. See, e.g.,
 
 Hunter v. Werner Co.,
 

 258 Ga.App. 379
 
 (2),
 
 574 S.E.2d 426
 
 (2002).
 

 4. Ford also contends that the trial court failed to properly charge the jury on proximate cause. Specifically, Ford claims that because the court's charge on failure to warn did not contain a specific reference to proximate cause, that the jury was misled into ruling for Gibson without considering his burden to show causation. However, Ford's argument ignores the fact that, elsewhere in the charge, the trial court specifically instructed the jury on proximate cause and instructed the jury that Gibson bore the burden of proving that the defendants caused the injuries at issue in the case. Viewing the charge as a whole, as we must (
 
 King v. Brown,
 

 280 Ga. 747
 
 (2)(d),
 
 632 S.E.2d 638
 
 (2006)), we conclude that the charge adequately and appropriately informed the jury regarding the essential element of proximate cause.
 

 Case No. S07A1367
 

 5. Draw-Tite argues that the trial court erred in refusing to apply OCGA § 24-9-67.1 to exclude the testimony of Gibson's expert, Fred Arndt. The trial court concluded that application of the statute would have been "unconstitutional under the present facts" because it would have denied Gibson due process by imposing a "new standard for expert witnesses" in the case. This conclusion, however, was incorrect. Here, because the final pretrial conference had already taken place prior to the trial court being able to conduct a hearing regarding the exclusion of Arndt's testimony pursuant to OCGA § 24-9-67.1, the statute would not have operated to impose a new standard for the admissibility of Arndt's testimony. The statute expressly provides that "[u]pon motion of a party, the court may hold a pretrial hearing to determine whether the witness qualifies as an expert and whether the expert's testimony satisfies the requirements of subsections (a) and (b) of this Code
 

 **404
 

 section. Such hearing and ruling shall be completed no later than the final pretrial conference." OCGA § 24-9-67.1(d). See also
 
 Bailey v. Edmundson,
 

 280 Ga. 528
 
 , 533(5),
 
 630 S.E.2d 396
 
 (2006) (where, after trial had begun, party requested a hearing to determine whether expert testimony would satisfy the requirements
 
 *352
 
 of OCGA § 24-9-67.1, "[t]he trial court correctly denied that request, since such a hearing and the ruling thereon shall be completed no later than the final pretrial conference contemplated under OCGA § 9-11-16") (citation and punctuation omitted). In this case, the motion to exclude Gibson's expert was filed several months after the final pretrial conference had already taken place. Thus, the time period within which the trial court was required to hold a hearing and rule on the motion had already passed. Therefore, pretermitting the question whether application of OCGA § 24-9-67.1 could be unconstitutional in some other circumstance, application of the statute here could not have been unconstitutional because it would not have retroactively impacted Gibson's rights in any way. See
 
 Woodruff v. Trust Co. of Georgia,
 

 233 Ga. 135
 
 , 140(2),
 
 210 S.E.2d 321
 
 (1974) ("A statute is [impermissibly] retroactive in its legal sense [when it] creates a new obligation on transactions or considerations already past, or destroys or impairs vested rights") (citation omitted). See also
 
 Mason v. Home Depot U.S.A., Inc.
 

 283 Ga. 271
 
 ,
 
 658 S.E.2d 603
 
 (2008). We therefore vacate that portion of the trial court's order declaring that application of OCGA § 24-9-67.1 would have been unconstitutional here.
 

 However, application of the statute also would not have changed the trial court's ultimate, and correct, conclusion that Draw-Tite's motion to exclude Gibson's expert was without merit. As discussed above, the time period within which Draw-Tite was entitled to a hearing and ruling on its motion had already passed, because the final pretrial conference had already taken place. See
 
 Bailey,
 

 supra,
 
 280 Ga. at 533(5),
 
 630 S.E.2d 396
 
 . As a result, Draw-Tite has provided no basis for reversal of the trial court's conclusion that the expert's testimony was admissible.
 
 [6]
 
 We therefore affirm the trial court's order to the extent that it denies Draw-Tite's motion to exclude Gibson's expert's testimony.
 

 6. Citing
 
 Polston v. Boomershine Pontiac-GMC Truck,
 

 262 Ga. 616
 
 ,
 
 423 S.E.2d 659
 
 (1992), Draw-Tite contends that the trial court erred in charging the jury on the "enhanced injury" doctrine, because
 

 **405
 

 the doctrine does not apply in failure-to-warn cases. Such a reading of
 
 Polston,
 
 however, is incorrect. In
 
 Polston,
 
 the plaintiff was injured in a car accident, and she sued both the driver of the car that hit her and the manufacturer of her car. She claimed that design defects in her car enhanced the nature of the injuries that she suffered following the initial collision with the driver who hit her. She did not, however, assert a failure-to-warn claim. Because only a design-defect claim was asserted in
 
 Polston,
 
 the Court only mentioned that specific claim in its holding that the plaintiff had "the burden of proving that a design defect was a substantial factor in producing damages over and above those which were probably caused as a result of the original impact or collision."
 
 Id. at 619
 
 ,
 
 423 S.E.2d 659
 
 . There is nothing in
 
 Polston,
 
 however, to suggest that an enhanced injury claim cannot be based on a manufacturer's failure to warn a consumer regarding a dangerous or defective product.
 
 [7]
 

 Moreover, this Court re-emphasized in
 
 Polston
 
 that "[t]o the extent that the injuries suffered by the plaintiff are indivisible, the defendants are treated as joint tortfeasors."
 
 Id.
 
 Here, there was evidence from which the jury could conclude that both Draw-Tite and Ford's failure to warn regarding the dangers presented by Draw-Tite's hitch design and Ford's fuel system and other components worked in concert to enhance the injuries suffered by Ms. Gibson after her initial impact with Burns' car. Specifically, one of Draw-Tite's own experts testified that a moment of force could move the sharp bolts of Draw-Tite's hitch through the fuel tank of the Marquis. Further, Draw-Tite's other
 
 *353
 
 witnesses confirmed that the company was aware of the fact that the bolts from their trailer hitch should not point in the direction of the fuel tank (because the bolts could pierce the tank), and that hitch makers commonly warned customers about the dangers presented by hitches interacting with rear fuel tanks. Finally, Gibson presented evidence, including expert testimony from Fred Arndt, that Draw-Tite did not provide a warning to Ms. Gibson regarding the danger presented by the hitch used in this case.
 
 [8]
 
 The trial court did not err in allowing the jury to consider the extent to which Ms. Gibson's injuries may have been enhanced by Draw-Tite and Ford's alleged failure to warn her regarding the dangers presented by their products. See
 
 id.
 

 **406
 

 7. Draw-Tite claims that the trial court abused its discretion in rehabilitating three biased jurors. However, the record belies this assertion. While each of the three prospective jurors expressed an initial distrust of corporations in general, they all unequivocally stated that they did not have a particular bias against Ford or Draw-Tite, and that they could decide the issues in the case based solely on the evidence presented and the charge given by the court. The jurors did not express any particular bias for or against any party in the case (see OCGA § 15-12-134), nor was this a situation where the trial court asked pressing questions to inappropriately rehabilitate otherwise biased jurors. Therefore, this enumeration is without merit. See, e.g.,
 
 Clack-Rylee v. Auffarth,
 

 273 Ga.App. 859
 
 ,
 
 616 S.E.2d 193
 
 (2005).
 

 Case Nos. S07X1368 and S07X1389
 

 8. Gibson has requested that his cross appeals be dismissed if this Court affirms the judgments in Case Nos. S07A1365 and S07A1367. In light of our dispositions in those cases, and consistent with Gibson's request, Gibson's cross appeals are hereby dismissed.
 

 Judgment affirmed in Case No. S07A1365. Judgment affirmed in part and vacated in part in Case No. S07A1367. Case Nos. S07X1368 and S07X1389 dismissed.
 

 All the Justices concur.
 

 The trial court granted partial summary judgment to Draw-Tite on Gibson's hitch design-defect claims, as such claims were barred by the statute of repose (OCGA § 51-1-11) and Gibson could not show "reckless" or "wanton" behavior on the part of Draw-Tite to meet the exception to the statute. OCGA § 51-1-11(c). The court also granted summary judgment to Draw-Tite on Gibson's punitive-damages claims. Thus, the only claim remaining against Draw-Tite at trial was Gibson's claim that Draw-Tite breached its duty to warn of a danger or dangers presented by its trailer hitch.
 

 These tests had been completed by Ford prior to Ms. Gibson's car accident.
 

 Prior to this refusal, the trial court had already sanctioned Ford for "its apparent desire to delay and frustrate . . . discovery" relating to other matters, and had ordered Ford to pay attorney fees to Gibson.
 

 The findings relating to wanton or reckless disregard for life or property were only used to establish, outside of the presence of the jury, that Gibson's compensatory damages claims were not barred by the statute of repose. Gibson would still have to present independent evidence at trial of wanton or reckless conduct to support his punitive damages claims.
 

 In this regard, Ford's claim that Gibson's design defect-claims could not survive the statute of repose is also without merit. The sanction imposed by the trial court expressly established for purposes of the statute "that the acts and omissions of Ford Motor Company in connection with the design, manufacture and sale of the fuel system and seats of the subject vehicle [met the exception to the statute of repose, OCGA § 51-1-11(c), in that they] amount[ed] to a willful, reckless, or wanton disregard for life or property."
 

 To the extent that Draw-Tite argues that the expert's testimony should have been excluded pursuant to OCGA § 24-9-67, this argument goes beyond the scope of specific constitutional ruling challenged in the enumeration of error and will not be addressed here. See
 
 Perdue v. O'Kelley,
 

 280 Ga. 732
 
 ,
 
 632 S.E.2d 110
 
 (2006).
 

 Nor would such a suggestion be logical, because, in some instances "products are defective solely due to an inadequate or absent warning." (Citations omitted.)
 
 Chrysler Corp. v. Batten,
 

 264 Ga. 723
 
 , 724(1),
 
 450 S.E.2d 208
 
 (1994).
 

 In this connection, as there is some evidence to authorize the jury's verdict on Gibson's failure-to-warn claim against Draw-Tite, the trial court did not err in denying Draw-Tite's motion for judgment notwithstanding the verdict.
 
 Lee v. Newman,
 

 240 Ga. 483
 
 ,
 
 241 S.E.2d 241
 
 (1978).