## S08A0347. BEAN v. WILSON.
(661 SE2d 518)

MELTON, Justice.

On November 28, 2001, William B. C. Vinson executed his Last Will and Testament naming his brother-in-law, Glenn Bean, as Executor and designating Patricia Lovins, his personal nurse, as beneficiary of his primary asset — his residence. After Vinson's death in August 2006, Donna Wilson, Vinson's daughter and sole surviving heir at law, filed a Caveat and Objection to Probate on the grounds that the will was the product of undue influence. Following a jury trial, the jury returned a general verdict, finding the will to be invalid,

leaving Wilson as the sole beneficiary of her father's estate. Bean appeals, arguing that the evidence presented at trial was insufficient to support the jury's verdict. For the reasons that follow, we affirm.

Viewed in the light most favorable to the jury's verdict, the evidence reveals that between July 2001, and September 2001, Vinson underwent surgery for an aneurysm, had his leg amputated, and underwent physical therapy. In light of Vinson's medical condition, Glenn and Betty Bean (Glenn's wife and Vinson's sister) hired Lovins to take care of Vinson on a full-time basis, and Lovins moved into Vinson's home at the end of July 2001. Lovins continued to live with Vinson and take care of him until his death in August 2006.

While Vinson was being cared for by Lovins, Lovins and the Beans took steps to prevent Wilson and her daughters from visiting Vinson, participated in meetings with Vinson's attorney, were present at the execution of the will in November 2001, and reviewed the will prior to Vinson signing it. The will excluded Wilson, left Vinson's personal residence worth $275,000 to Lovins, and left most of Vinson's remaining estate to the Beans.

1. Bean contends that the trial court erred in denying his motion for directed verdict because there was insufficient evidence from which a jury could conclude that undue influence existed to invalidate Vinson's will. However, the question of undue influence is generally for the factfinder (*Mathis v. Hammond*, 268 Ga. 158 (3) (486 SE2d 356) (1997)), and a directed verdict is authorized only when "there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, . . . demand[s] a particular verdict." OCGA § 9-11-50 (a). Accordingly, as an appellate court, we view the record in the light most favorable to Wilson to determine if there is any evidence that would authorize a finding of undue influence by the jury. *Cook v. Huff*, 274 Ga. 186 (1) (552 SE2d 83) (2001).

A will is invalid "if anything destroys the testator's freedom of volition, such as . . . undue influence whereby the will of another is substituted for the wishes of the testator." OCGA § 53-4-12. Undue influence may take many forms, and may be shown by circumstantial evidence. *Bailey v. Edmundson*, 280 Ga. 528 (1) (630 SE2d 396) (2006). Further, "[a] rebuttable presumption of undue influence arises when a beneficiary under a will occupies a confidential relationship with the testator, is not the natural object of his bounty, and takes an active part in the planning, preparation, or execution of the will." (Citation omitted.) Id. at 529 (1).

Here, there was evidence of a confidential relationship between Vinson and his caregiver, Lovins. As Vinson's full-time, live-in caregiver, Lovins took care of all of Vinson's personal and medical needs. Vinson, an elderly amputee, depended on Lovins to transport him,

bathe him, groom him, feed him, cook for him, clean for him, arrange for his medical care, and teach him to walk. Also, the evidence reveals that Vinson informed Lovins that he was afraid that his daughter would put him in a nursing home if Lovins did not continue to take care of him. Furthermore, there is evidence that Lovins and the Beans isolated Vinson from Wilson and her daughters by blocking calls from Wilson to her father, throwing away letters that one of Wilson's daughters attempted to send to Vinson, and refusing to allow Wilson and her daughters to see Vinson when they attempted to visit him. This evidence was sufficient for the jury to conclude that a confidential relationship existed between Lovins and Vinson. See *Bailey*, supra, 280 Ga. at 529-530 (1); OCGA § 23-2-58 (A confidential relationship exists "where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another.").

Moreover, although Lovins lived with Vinson for only four months prior to the signing of his will, during that time she participated in meetings with Vinson's attorney and was present at the execution of the will. Because some evidence supports the conclusion that a confidential relationship existed and that Lovins took an active role in the planning, preparation, or execution of the will, the evidence was sufficient to create a rebuttable presumption that Vinson's will was the product of undue influence. *Bailey*, supra, 280 Ga. at 529-530 (1). "Because that presumption does not vanish in the face of evidence contrary to the presumed fact, it alone is sufficient to support the jury's finding as to undue influence."[1] (Citation omitted.) Id. at 530 (1). The trial court correctly denied Bean's motion for directed verdict.

2. In light of our disposition in Division 1, we need not address Bean's remaining contentions.[2]

*Judgment affirmed. All the Justices concur.*

DECIDED MAY 19, 2008.

*Arthur H. Marateck*, for appellant.

---

[1] Due to this conclusion, we need not address the question whether the evidence would have otherwise been sufficient to show undue influence even if there had been no evidence of a confidential relationship between Vinson and Lovins. But see *Bailey*, supra, 280 Ga. at 530-531 (1) (after concluding that evidence supported rebuttable presumption of undue influence, Court went on to conclude that evidence also would have been sufficient to show undue influence even if confidential relationship had not existed between testator and care giver).

[2] Indeed, to the extent that Bean argues that the evidence did not show Vinson's lack of testamentary capacity, such arguments are misplaced. As shown in the pretrial order, the substantive issue in this case was not whether Vinson had the capacity to make a valid will, but whether the evidence supported a finding that the will was the product of undue influence.

*Green, Johnson & Landers, Jerry A. Landers, Jr., Mary P. Adams, Spruell, Taylor & Associates, Billy L. Spruell,* for appellee.