S12A0405. DAVISON et al. v. HINES et al.
(729 SE2d 330)

MELTON, Justice.

Following a November 1-9, 2010 jury trial in the Superior Court of Houston County, the jury declared that a Will and a Revocable Trust executed by Thomas Hines, Sr. ("Mr. Hines") in 2002 were invalid, as they were the product of undue influence. Steve and Deborah Davison, the executors of Mr. Hines' estate, appeal from this ruling. For the reasons that follow, we affirm.

The record reveals that, on October 30, 2001, Mr. Hines executed a Will leaving the bulk of his estate to his wife for her life, and, upon her death, dividing the estate equally between his sons, appellees Thomas and Frank Hines.[1] On January 5, 2002, Mr. Hines executed a new Will and created the "Thomas McComb Hines Revocable Trust," documents that were designed to give appellants Steve Davison and his wife, Deborah,[2] control over Mr. Hines' assets and estate.[3] Mr. Hines died on June 26, 2002.

On September 24, 2004, Thomas and Frank sued the Davisons in the Houston County Superior Court for various torts, including conversion. They eventually amended their complaint on December 6, 2007 to add claims for intentional infliction of emotional distress

---

[1] Although this 2001 Will was not admitted into evidence, the parties stipulated to its existence and the distribution plan contained therein. In any event, this particular Will is not the subject of the current appeal.

[2] Deborah Davison is one of four children of Frank Hines and a granddaughter of Mr. Hines.

[3] These two documents are the subject of the current appeal.

and "fraudulent concealment of relevant facts," and to assert that the 2002 Will and Trust were invalid due to undue influence. The Superior Court then ordered the Davisons to offer the 2002 Will for solemn form probate in the Houston County Probate Court, and Thomas and Frank's Superior Court action was stayed pending resolution of the issues regarding the 2002 Will.

Following a January 6, 2009 hearing in the Probate Court, the probate judge found that the 2002 Will was not the product of undue influence and admitted the Will for solemn form probate. Thomas and Frank appealed this ruling to the Superior Court, and this appeal from the Probate Court was consolidated with Thomas and Frank's previously filed civil action that had been stayed pending the Probate Court's decision regarding the validity of the 2002 Will. On October 22, 2009, the Davisons moved for summary judgment, and, on January 8, 2010, the Superior Court ruled in favor of the Davisons on certain issues, finding that (1) Mr. Hines had testamentary capacity to execute the 2002 Will; (2) no fraud had been perpetrated on Mr. Hines in connection with the Will and Trust; and (3) Thomas and Frank could not recover on their claim for intentional infliction of emotional distress. However, the Superior Court judge denied the Davisons summary judgment on the issue of whether or not the 2002 Will and Trust were the product of undue influence.

The case proceeded to a jury trial in the Superior Court, where the jury ultimately found that the 2002 Will and Trust were invalid because they were the product of undue influence. Viewed in the light most favorable to the jury's verdict, the evidence revealed that, in December 2001, although Mr. Hines did not wish to move from his home, the Davisons made arrangements to move Mr. Hines to their home in Houston County. The evening that they moved Mr. Hines to their home, the Davisons enlisted a lawyer to draft and oversee Mr. Hines' execution of a power of attorney, which gave the Davisons control over Mr. Hines' affairs and property.[4] Around that same time, Mrs. Davison began expressing displeasure with Mr. Hines' 2001 Will, and Mr. Davison used a lawyer to begin creating Mr. Hines' 2002 Will and Trust. The Davisons also began to isolate Mr. Hines from all but very controlled contact with the rest of his family — even preventing Thomas and Frank from visiting or speaking with their father on more than one occasion.

---

[4] Mr. Davison later used this power of attorney to write two checks to himself. The first one, dated March 19, 2002, was for $100,000, and the second one, dated June 20, 2002, was for $150,000.

On December 28, 2001, with the 2002 Will and Trust drafted and ready for signature based solely on input from Mr. Davison, the Davisons' attorneys met with Mr. Hines to discuss his testamentary plan. Mr. Hines indicated that he wanted to provide for his Wife, Mary, but also stated that "whatever Deborah and Steve [Davison] agree[d] on is what [he] want[ed] to do." Mr. Hines further stated that he "agree[d] with anything about the two boys [Frank and Thomas], even if [Steve and Deborah] want[ed] to cut them out [of the Will]." He went on to say that he would "sign anything Steve and Deborah want[ed]" and that "[w]hatever [Steve and Deborah did was] completely OK with [him]." Ultimately, the documents signed by Mr. Hines gave the Davisons complete control over the distribution of Mr. Hines' assets, and allowed for the possibility that Frank and Thomas would receive nothing if the assets in the Trust were depleted after expenses and debts of the estate were satisfied.[5] Also, despite Mr. Hines' stated goal of providing for his wife, the 2002 Will and Trust made no mention of Mrs. Hines.

1. The Davisons contend that the trial court erred in denying their motions for directed verdict and for judgment notwithstanding the verdict because the evidence did not support the jury's finding of undue influence. We disagree.

[T]he question of undue influence is generally for the factfinder (*Mathis v. Hammond*, 268 Ga. 158 (3) (486 SE2d 356) (1997)), and a directed verdict is authorized only when "there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, . . . demand[s] a particular verdict." OCGA § 9-11-50 (a). Accordingly, as an appellate court, we view the record in the light most favorable to [Frank and Thomas] to determine if there is any evidence that would authorize a finding of undue influence by the jury. *Cook v. Huff*, 274 Ga. 186 (1) (552 SE2d 83) (2001).

A will is invalid "if anything destroys the testator's freedom of volition, such as . . . undue influence whereby the will of another is substituted for the wishes of the testator." OCGA § 53-4-12. Undue influence may take many forms, and may be shown by circumstantial evidence. *Bailey v. Edmundson*, 280 Ga. 528 (1) (630 SE2d 396) (2006). Further,

---

[5] In this connection, Frank and Thomas argued below that the personal checks that Mr. Davison wrote to himself through the power of attorney that he had over Mr. Hines' affairs showed an effort to deplete the assets of Mr. Hines' estate before he died so that there would be nothing left in the Trust for Frank and Thomas to collect after Mr. Hines died.

"[a] rebuttable presumption of undue influence arises when a beneficiary under a will occupies a confidential relationship with the testator, is not the natural object of his bounty, and takes an active part in the planning, preparation, or execution of the will." (Citation omitted.) Id. at 529 (1).

*Bean v. Wilson*, 283 Ga. 511, 512 (1) (661 SE2d 518) (2008).

Here, even if no rebuttable presumption of undue influence could be shown, the evidence was sufficient for the jury to conclude that Mr. Hines' Will and Trust were the result of undue influence. Indeed,

an attack on a will as having been obtained by undue influence may be supported by a wide range of testimony, including evidence of a confidential relation between the parties, the reasonableness or unreasonableness of the disposition of the testator's estate, old age, or disease affecting the strength of the mind, tending to support any other direct testimony or any other proved fact or circumstance going to show the exercise of undue influence on the mind and will of the testator.

(Citations and punctuation omitted). *Dyer v. Souther*, 272 Ga. 263, 264-265 (2) (528 SE2d 242) (2000).

The evidence presented at trial allowed the jury to conclude that a confidential relationship existed between Mr. Hines and the Davisons, as they took care of the elderly Mr. Hines while he lived with them and they took steps to isolate him from his sons, Frank and Thomas. See *Bean*, supra, 283 Ga. at 513 (1). See also OCGA § 23-2-58 (A confidential relationship exists "where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another"). Moreover, Mr. Davison took a leading role in the shaping of Mr. Hines' 2002 Will and Trust after Mrs. Davison expressed displeasure with Mr. Hines' original Will, and by the time Mr. Hines was presented with the 2002 Will and Trust, he was willing to "sign anything Steve and Deborah want[ed]." In this regard, the final Will and Trust allowed for the possibility that the Davisons could ensure that Frank and Thomas received nothing, and the documents did not even account for Mr. Hines' own expressed desire to provide for his wife. Because some evidence supports the conclusion that a confidential relationship existed and that the Davisons took an active role in the planning, preparation, and execution of the 2002 Will and Trust such that their will was being substituted for that of Mr. Hines in the creation of the documents, the evidence was sufficient for the jury to conclude that these documents were the

product of undue influence. See, e.g., *Dyer*, supra. Accordingly, the trial court correctly denied the Davisons' dispositive motions.

2. The Davisons argue that, because the Probate Court lacked jurisdiction over any claims relating to the 2002 Trust, the Superior Court was without authority to find the Trust invalid as being a product of undue influence. See, e.g., *Mitchell v. Mitchell*, 220 Ga. App. 682, 683-684 (2) (469 SE2d 540) (1996) (where probate court lacks jurisdiction to determine a particular issue, the superior court "[does] not have jurisdiction to decide the matter on appeal, and its lack of jurisdiction [cannot] be waived by the [parties]"). See also OCGA § 53-12-6 (a) ("Trusts are peculiarly subjects of equity jurisdiction"); OCGA § 23-1-1 ("All equity jurisdiction shall be vested in the superior courts of the several counties"). However, this argument is entirely misplaced, as the record reveals that the issue of the validity of the Trust did not reach the Superior Court by way of appeal from the Probate Court. The Trust issue was already pending in the September 24, 2004 Superior Court action that had previously been filed by Frank and Thomas. While that Superior Court action remained pending, the Probate Court only considered issues relating to the 2002 Will. When the issues relating to the *Will* were appealed to the Superior Court, the Davisons then *requested* that the Will issues be consolidated with the still pending civil action involving the Trust because the actions involved common questions of law and fact. The challenges to the validity of the Will and the Trust were then properly tried before a jury in the Superior Court. The Davisons' argument that this was somehow improper is entirely without merit.

3. The Davisons contend that the trial court erred in admitting into evidence the March 19, 2002 check for $100,000, and the June 20, 2002 check for $150,000 that Mr. Davison had written to himself pursuant to the power of attorney that he had over Mr. Hines' affairs. However, "[r]elevant evidence about the [testator's] state of mind at the time of the execution of the will includes testimony relating to a reasonable period of time before *and after* the execution of the will." (Citation omitted; emphasis supplied.) *Akin v. Patton*, 235 Ga. 51, 53 (218 SE2d 802) (1975). Here, both checks were written only a few months after the execution of the Will and Trust, and they were relevant to the jury's determination of whether or not the Davisons were consistently exercising control over Mr. Hines for their own personal gain. We find no abuse of discretion in the trial court's admission of this evidence. See, e.g., *Dorsey v. Kennedy*, 284 Ga. 464 (1) (668 SE2d 649) (2008).

4. The Davisons argue that the trial court erred by prohibiting them from arguing to the jury that they had previously been granted summary judgment on Frank and Thomas' claims that Mr. Hines

lacked testamentary capacity and that the 2002 Will and Trust were the product of fraud. However, the record reveals that the trial court merely prevented the Davisons from arguing to the jury that "the Judge ha[d] reviewed the evidence" to come to certain conclusions about fraud and testamentary capacity. As the Judge himself could not make such a statement to the jury directly, we find no error in the trial court's refusal to allow the Davisons to make such a statement indirectly. See OCGA § 9-10-7 ("It is error for any judge, during the progress of any case, or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved"). Moreover, when the trial court indicated that it would allow the Davisons to argue that undue influence was the only issue to be decided in the case, and "that testamentary capacity [and] fraud [were] not issues in [the] case," the Davisons acquiesced in this ruling. The Davisons have therefore provided no basis for reversal on appeal in connection with the trial court's ruling. See, e.g., *Norman v. Ault*, 287 Ga. 324, 329 (3) (695 SE2d 633) (2010) ("A litigant cannot submit to a ruling or acquiesce in the holding, and then complain of the same on appeal") (citation and punctuation omitted).

*Judgment affirmed. All the Justices concur.*

DECIDED JULY 2, 2012 —
RECONSIDERATION DENIED JULY 26, 2012.

*James, Bates, Brannan & Goover, Thomas C. James III, G. Grant Greenwood*, for appellants.
*Perry & Walters, George P. Donaldson III, Richard W. Fields, Misty G. Haskins*, for appellees.