301 Ga. 111
FINAL COPY

S17A0450, S17X0451. MILBOURNE et al. v. MILBOURNE; and vice versa.

GRANT, Justice.

This case comes to us as a dispute between the daughter and sister of decedent Edison Jamal Milbourne ("Edison"). Daughter Janay Milbourne ("Janay") filed a caveat asserting that Edison's January 2013 Will ("January Will") was invalid because it had been procured by undue influence by sister and guardian Vashti Milbourne ("Vashti"); because it had been revoked by Edison; because it had been improperly executed; and because Edison lacked testamentary capacity to make the will in the first place. The Gwinnett County Probate Court rejected all of these contentions on summary judgment motions except the first; the court found that a question of fact remained on the issue of undue influence. Vashti disagrees with that decision, and this Court granted her application for an interlocutory appeal. Janay, meanwhile, filed a cross-appeal of the probate court's grant of summary judgment to Vashti on the issue of revocation. Because the probate court was correct that an issue of fact

remains on undue influence, and in its conclusion that Edison did not revoke his January Will, we affirm both judgments.

I.

Viewed in the light most favorable to the non-movant,[1] the facts show that in 1999, Edison suffered a work-related brain injury that impaired his ability to care for himself independently. He initially lived at home with his wife Janita and his infant child, Janay, but it soon became clear that his round-the-clock care requirements were more than Janita could handle (she worked two jobs and also cared for Janay). Edison then lived in rehabilitation facilities. His sister Vashti was appointed as guardian in 2009 — approximately ten years after Edison's brain injury and one month after his $726,000 workers compensation settlement was finalized. Up until the settlement, Vashti had not been Edison's caregiver.

---

[1] We conduct a de novo review of the evidence to determine whether a genuine issue of material fact exists, and whether the undisputed facts, when viewed in the light most favorable to the non-moving party, warrant judgment as a matter of law. *Benton v. Benton*, 280 Ga. 468, 470 (629 SE2d 204) (2006).

2

Following Vashti's appointment, she came to Georgia and moved Edison out of his rehabilitation facility. Vashti began to make significant financial demands. "Because of the huge budget requested by [Edison's] guardian," the probate court appointed a guardian ad litem to advise the court on how best to manage Edison's budget and living arrangements. In that same order, the court provided that Edison would receive a monthly allotment of $1,000; as it turns out, that was the only money that Edison, Vashti, or Vashti's daughter Tiffany, who also lived with Edison, had to pay their living expenses; Vashti earned no income on her own. Guardian ad litem Janet Grayson explained that she had tried to make Edison and Vashti understand that the combination of Edison's medical needs and his likely lifespan of 26 more years meant that the settlement money could not be spent quickly. Nonetheless, Grayson recounted that Vashti repeatedly demanded a Cadillac Escalade (in spite of the fact that Edison himself had no prospect of being able to drive), about $300,000 for a four or five-bedroom home, and $27,000 to furnish the home. Vashti also asked for $30,000 in advance for her services as caregiver. According to Grayson, Vashti also told Edison "many times" that "[t]hey are going to put

3

you in one of those homes." Grayson stated that she could see the fear in Edison's face when Vashti made these kinds of remarks, and added that in her view Vashti induced Edison's fear of long-term care facilities.

Grayson also recalled that Vashti repeatedly stated that "everybody else had gotten paid, and it was her turn to get paid." With respect to Edison's daughter Janay, on the other hand, Grayson testified that "he very strongly had a desire to reestablish a relationship with her and to include her in his financial bounty," but also that his expectation that Janay may come live with him was "very sweet but very unrealistic." There is evidence that Vashti hindered Edison's relationship with Janay. When Janay attempted to call Edison at his home, for instance, Vashti informed her that he was not there, or that he did not want to speak with her. When Janay visited Edison for one of his birthdays, which coincided with Christmas Eve, Vashti and Janay got into an argument, and Vashti called the police. Grayson considered calling Adult Protective Services and recommending that Vashti be removed as Edison's guardian, but made the reluctant decision not to do so because he was "emotionally dependent" on her.

4

Edison did not have a will when Vashti became his guardian, but apparently began to seek one after Vashti arrived in Georgia. In her deposition, Vashti asserted that Edison's conservator, John Tomlinson, refused to write the will. Tomlinson, in contrast, testified that he wrote a will for Edison but when he called to let Edison know the draft was ready to review, Vashti relayed that she had hired a different lawyer, Charles Tingle, to write the will. When Tomlinson called Tingle to ask about paying the bill for Edison's will, Tomlinson was told that the bill had already been paid.

As it turns out, Vashti found Tingle in "[t]he Yellow Pages just randomly" and called to set up an appointment with him. Vashti drove Edison to visit Tingle between two and five times. During one visit, Vashti approached Tingle about the possibility of replacing Tomlinson as conservator of the estate and shared relevant documents with him, but, after reviewing the papers, Tingle declined to do so. Vashti admitted that she filled out the client information sheet for Edison during the first visit with Tingle, but gave inconsistent testimony on whether she was present as Edison described his wishes to Tingle, ultimately claiming that she could not recall whether she was

5

present or not. For his part, Tingle testified that Vashti had "probably" attended at least one of two meetings regarding the will. As noted above, there were several additional meetings between at least Vashti and Tingle; the record is not clear whether Edison attended any of those meetings. Vashti paid the bills for Tingle's work over the course of several visits, and, during one of the meetings, Edison executed the January Will.

Nine months later, in October 2013, Edison executed a second will ("October Will").[2] Following Edison's death in July 2014, Vashti submitted the October Will to probate. Janay filed a caveat alleging that the October Will was procured through undue influence. The jury returned a verdict denying probate of the October Will, concluding that it was invalid because Vashti had

---

[2] Although the Court need not determine the contents of either the January Will or the October Will, and does not do so in this decision, a brief review of each illustrates the way the two documents distributed Edison's estate. The January Will devised most of Edison's property, including the house he owned, to Vashti except for equal devises of $50,000 to Tiffany and Janay. Under the terms of the January Will, if Vashti predeceased Edison, Janay would take Vashti's place as devisee. The October Will devised all of Edison's property to Vashti. If Vashti predeceased Edison, Tiffany would take Vashti's place as devisee.

exercised undue influence and because Edison had failed to properly execute the document.

After the jury verdict on the October Will, Tiffany Wootson, Vashti's daughter, petitioned to probate the January Will. As she had done for the October Will, Janay filed a caveat to the probate of the January Will, this time arguing that lack of testamentary capacity, fraud, undue influence, and revocation barred probate. Subsequently, Vashti joined Tiffany's petition to probate the January Will.

Vashti and Tiffany filed a motion for summary judgment, contending that Janay's caveat was meritless and that they were entitled to probate the January Will as a matter of law. The probate court conducted a hearing on the motion for summary judgment on December 15, 2015. During a recess in the hearing, Janay filed a copy of former guardian ad litem Janet Grayson's testimony from the October Will trial, a proceeding that had been held before the same probate judge.[3] On December 21, 2015, the probate court entered an order granting

---

[3] After the probate court concluded the summary judgment hearing and entered its order, Janay submitted trial transcripts from the October Will trial, which were incorporated into the record below. Vashti contends that these

Vashti and Tiffany's motion for summary judgment on all but one ground, leaving the claim that the January Will was procured by undue influence for the jury to decide.

Vashti and Tiffany now appeal the probate court's order denying their motion for summary judgment on the undue influence claim, as well as the probate court's decision to consider Grayson's testimony and other evidence that they claim was untimely filed. Janay cross-appeals the probate court's order granting summary judgment against her claim that Edison revoked the January Will.

## II.

Before moving to the parties' substantive disagreements with the probate court's summary judgment rulings, we first consider what evidence was

transcripts were improperly included in the record, while Janay counters that because the two wills are filed under the same estate number and proceedings were held before the same probate judge, the transcripts were properly included. But we need not consider whether these October Will trial transcripts were part of the record because we conclude, as a matter of law, that there are genuine issues of fact in dispute without considering these transcripts. Thus, we rely only on materials that were before the probate court when it entered its summary judgment order.

available for the probate court to consider when making those rulings. Vashti and Tiffany contend that the probate court erred by overruling an objection to Janay's filing of evidentiary materials — specifically, Grayson's trial testimony — during the probate court's hearing on the motion for summary judgment. Janay, on the other hand, argues that the probate court properly considered the transcript, which was from the October Will trial, and thus was already known to the judge. Neither party's argument is completely correct, but we find that the probate court was within its discretion in considering the transcript.

As an initial matter, it is no surprise that certified trial transcripts may be examined on a summary judgment motion to help the court determine if a genuine issue of material fact exists. See *Patrick v. Floyd Med. Center*, 255 Ga. App. 435, 437 (1) (565 SE2d 491) (2002). Of course, those transcripts, like any evidence, must be properly before the court. Vashti argues that the Janet Grayson transcript was not, because it needed to be entered into the record at least one day before the hearing in order to be considered. It is true that our summary judgment statute sets out an apparent limit, stating that a party resisting a motion for summary judgment may serve opposing affidavits

9

at any time prior to the day of the hearing. See OCGA § 9-11-56 (c); *SJN Properties v. Fulton County Bd. of Assessors*, 296 Ga. 793, 795-796 (1) (770 SE2d 832) (2015). But that statute is not at all dispositive. To begin with, the evidence at issue here consists of trial transcripts rather than affidavits. And even if we were to assume that the affidavit provision extends to other types of evidence, "[t]rial courts are vested with discretion to consider opposing affidavits which are not served within statutory time limits." *Hall v. Nelson*, 282 Ga. 441, 442 (2) (651 SE2d 72) (2007) (citing *Liberty Nat. Life Ins. Co. v. Houk*, 248 Ga. 111, 112 (1) (281 SE2d 583) (1981)). While our summary judgment statute acts as a temporal limit on the parties' submission of affidavits, it does not divest the trial court of all discretion to consider evidence presented less than one day before a hearing. See, e.g., *Durden v. Griffin*, 270 Ga. 293, 294 (1) n. 2(509 SE2d 54) (1998).

Vashti's reliance on *Ray v. Standard Fire Ins. Co. of Alabama*, 168 Ga. App. 116 (308 SE2d 221) (1983), is similarly misplaced because that case stands for the proposition that it is error to include evidence in the appellate record that was not admitted into the record during the trial court proceedings.

10

Grayson's testimony, however, was admitted during the hearing below. Accordingly, Grayson's transcript was part of the record below and is properly included in the appellate record. Vashti has not shown that the probate court abused its discretion to admit and consider the Grayson transcript under these circumstances.

## III.

Now to Vashti's contention that the probate court erred in denying her motion for summary judgment on the issue of undue influence. Among the problems Vashti faces is that, as this Court has emphasized, "the question of undue influence is generally for the factfinder." *Bean v. Wilson*, 283 Ga. 511, 512 (1) (661 SE2d 518) (2008); see also *Bailey v. Edmundson*, 280 Ga. 528, 529 (1) (630 SE2d 396) (2006). And summary judgment is proper only if, construing the evidence most favorably for the nonmoving party, no genuine issue of material fact remains as to whether the will was the product of undue influence. *Johnson v. Burrell*, 294 Ga. 301, 302 (2) (751 SE2d 301) (2013). Under that standard, the record in this case contains sufficient evidence to

11

allow the jury to fulfill its role as factfinder on the question of undue influence.

This Court has recognized that "[u]ndue influence to procure a will may take many forms and may operate through diverse channels" and that "the existence and effective power of *undue influence can rarely be shown except by circumstantial evidence*." *Dyer v. Souther*, 272 Ga. 263, 264 (2) (528 SE2d 242) (2000) (emphasis supplied); see also *Bean*, 283 Ga. at 512 (1) ("Undue influence may take many forms, and may be shown by circumstantial evidence."). In keeping with this understanding, we have also said that

> an attack on a will as having been obtained by undue influence may be supported by a wide range of testimony, including evidence of a confidential relation between the parties, the reasonableness or unreasonableness of the disposition of the testator's estate, old age, or disease affecting the strength of the mind.

*Dyer*, 272 Ga. at 264-265 (2) (citations and punctuation omitted). What is more, and as we again recognized in *Dyer*, "[w]hile the quantity of influence varies with the circumstances of each case . . . the amount of influence necessary to dominate a mind impaired by age or disease may be decidedly less than that required to control a strong mind." Id. at 265.

In fact, when a beneficiary under a will occupies a confidential relationship with the testator, is not the natural object of the testator's bounty, and takes an active part in the planning, preparation, or execution of the will, a rebuttable presumption of undue influence arises. *Davison v. Hines*, 291 Ga. 434, 437 (1) (729 SE2d 330) (2012). Here, it may be that these factors are met. But we need not engage in any burden-shifting analysis because Georgia law is clear that a jury may conclude that a will is the result of undue influence even absent a rebuttable presumption of undue influence; in this case, the quantum of evidence is sufficient without regard to any presumption. See id. ("Here, even if no rebuttable presumption of undue influence could be shown, the evidence was sufficient for the jury to conclude that [the] Will and Trust were the result of undue influence.").

13

The record shows that Janay has set before the court a "wide variety" of evidence that could lead a jury to conclude that undue influence was a factor in the January Will: Vashti's position as Edison's guardian; her emotional control over Edison, who had suffered brain damage; her extensive budgetary requests; her statement that it was her turn to get paid; and her role in the creation of the will. There is no dispute in the record that Vashti sought out Tingle to write a will for Edison, drove Edison to and from Tingle's office, and paid Tingle's bill. Moreover, if the jury chooses to credit Janay's evidence, it could also conclude that Vashti was present while Edison's will was drafted and that Vashti went to Tingle's office several times when Edison was not present. In fact, Vashti herself testified that she filled out the client information in Tingle's office "before we sat down to do the Will." There is also evidence that Vashti may have isolated Edison, including from his daughter Janay. Finally, Janay sets out evidence that could lead a jury to conclude that Vashti induced in Edison a fear of adult care facilities and then threatened Edison that he would be sent back to one. As an appellate court, we of course do not conclude that any of these assertions are true. But what we can say is that all of these factors

14

create a genuine issue of material fact on the issue of undue influence. See *Skelton v. Skelton*, 251 Ga. 631, 634 (5) (308 SE2d 838) (1983) (jury question arose when circumstantial evidence showed a confidential relationship existed between the proponent and the testator, the proponent was present when the will was drafted, the proponent knew its contents, and the proponent was with the testator the majority of the time).

It is true that "'[t]he indulgence of mere suspicion of undue influence cannot be allowed.'" *Harper v. Harper*, 274 Ga. 542, 544 (2) (554 SE2d 454) (2001) (citation omitted). But here, the evidence reflected more than a mere opportunity for Vashti to exert influence on Edison. That distinguishes this case from *Lipscomb*, where there was "simply no evidence" that the proponent and beneficiary of the will at issue exerted any influence over the making of the testator's will. *Lipscomb v. Young*, 284 Ga. 835, 836 (672 SE2d 649) (2009). Instead, the evidence in this case shows that a confidential relationship between Vashti and Edison existed, that Vashti exercised a great deal of control over Edison, and that she may have actively taken part in the planning or execution of the will.

The facts here are really more like those in *Bean*, where a full-time, live-in caregiver "took care of all of [the testator's] personal and medical needs," and the evidence showed that the testator feared that his daughter would put him in a nursing home if the caregiver did not continue to care for him. *Bean*, 283 Ga. at 512-513. In *Bean*, as here, there was also evidence that the caregiver isolated the testator from his children, participated in meetings with the attorney, and was present at the execution of the will. Id.; see also *Davison*, 291 Ga. at 437-438 (1) ("Because some evidence supports the conclusion that a confidential relationship existed and that the [beneficiaries] took an active role in the planning, preparation, and execution of the [testator's will and trust] such that their will was being substituted for that of [the testator] in the creation of the documents, the evidence was sufficient for the jury to conclude that these documents were the product of undue influence" and the trial court "correctly denied" dispositive motions.); *Dyer*, 272 Ga. at 266 (2).

In short, because genuine issues of material fact relevant to the issue of undue influence exist, the probate court did not err in denying Vashti's motion for summary judgment on this point.

16

IV.

Having addressed Vashti's claim of error, we turn to Janay's. On cross-appeal, Janay argues that the probate court erred in concluding as a matter of law that Edison did not revoke the January Will. According to Janay, Edison explicitly told Vashti that he no longer wanted the January Will, and Vashti then breached the fiduciary duty that she owed to Edison as his legal guardian by failing to destroy the January Will. In Janay's telling, that statement served as an express revocation that Vashti had an obligation to carry out. Janay's primary legal argument seems to be that a guardian has a duty to destroy a ward's will upon the ward's request, even where that guardian has not been granted testamentary powers by the court and even where the ward has testamentary capacity. There are several reasons this contention is incorrect.

First, to the extent that Janay contends that Edison's statement that he no longer wanted the January Will was a sufficient revocatory act in and of itself, we disagree. This Court has rejected such simplistic forms of revocation. See *Driver v. Sheffield*, 211 Ga. 316, 316 (4) (85 SE2d 766) (1955) ("[R]evocation

17

of a will cannot be established by proof of parol declarations by the testator."); see also *Harper v. Harper*, 281 Ga. 25, 27 (635 SE2d 711) (2006) (use of parol evidence to prove the existence of a revocation clause in a subsequent will "cannot be tolerated because it puts us in danger of returning to the days of revocation by oral declaration").

Rather, under Georgia law, there are only two ways to expressly revoke a will: by so stating in a subsequent will or legal document, or by "destruction or obliteration of the will done by the testator with an intent to revoke, or by another at the testator's direction." OCGA § 53-4-44. Neither party argues that the subsequent (and rejected) October Will had the legal effect of revoking the January Will.[4] But the parties also agree that neither Edison nor Vashti destroyed the January Will or took any steps to obliterate the January Will. That kind of act is plainly required under Georgia law. See, e.g., *Lovell v. Anderson*, 272 Ga. 675, 676 (2) (533 SE2d 64) (2000) ("To effect a revocation of a will by obliteration, in addition to the requirement that the obliteration be

---

[4] We note that although both parties address the doctrine of dependent relative revocation in their briefs, they both contend the doctrine is inapplicable. We express no opinion on that matter.

material, there must be proof of a joint operation of act and intent."); *Wells v. Jackson*, 265 Ga. 181, 183 (453 SE2d 690) (1995) ("Revocation is not accomplished by the maker's unsuccessful attempt to destroy or obliterate."); *Payne v. Payne*, 213 Ga. 613, 615 (100 SE2d 450) (1957) (No revocation occurred where testator threw his will into a fire, but his wife jerked it out of the fire before "a single word which the testator employed to express his testamentary wish [was] destroyed, obliterated, or even so much as rendered obscure in the slightest degree."). Janay is correct that the law does not require that the testator in particular perform the act of destruction to validly revoke a will. *Peterson v. Harrell*, 286 Ga. 546, 547 (2) (690 SE2d 151) (2010). But the law does require that *someone* perform the act of destruction. *Wells*, 265 Ga. at 182.

Janay relies heavily on Vashti's status as guardian, but appointment of a guardian offers neither an exception to the physical destruction rule nor a determination that the ward lacks testamentary capacity.[5]   OCGA § 29-4-20

---

[5] The probate court found that Edison retained testamentary capacity; that finding has not been challenged on appeal.

(c). Indeed, Janay's argument seems to hinge on the fact that Edison *retained* testamentary capacity; otherwise, any statement that he wished to revoke the January Will would be without legal effect. In any event, Georgia law specifically bars a guardian from disposing of a ward's property without the involvement of a conservator. See OCGA § 29-4-23 (b). And absent an order otherwise, Edison's conservator, and not his guardian, would have been responsible for estate planning matters if Edison lacked testamentary capacity. See also OCGA § 29-5-23 (c) (10) (permitting a court to grant a conservator the power to engage in estate-planning for the ward under certain circumstances). Again, there is no suggestion that Edison or his conservator destroyed or obliterated the January Will after it was executed.

For all of these reasons, even assuming that Edison stated that he no longer wanted the January Will to be in effect, that statement would be insufficient to revoke the will or to require his guardian to do so. Accordingly, the probate court did not err when it granted Vashti's motion for summary judgment on the revocation issue.

Judgment affirmed. All the Justices concur.

Decided May 1, 2017.

Wills. Gwinnett Probate Court. Before Judge Cranford.

Kitchens Kelley Gaynes, David F. Cooper, Christopher J. Hoffman, for appellants.

Robert W. Hughes, Jr.; John E. Tomlinson; Deana M. Spencer, for appellee.