**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 3, 2023**

# In the Court of Appeals of Georgia

A22A1518. IN RE ESTATE OF CHARLES D. HENRY, deceased.

DILLARD, Presiding Judge.

In 2017, Charles Darrell Henry executed a new will, in which he revoked a 2007 will and bequeathed the majority of his estate to his current wife, Shirley Langley Henry. Henry died several months later, and Shirley filed a petition to probate the new will. Subsequently, Henry's two children from his first marriage—Tenika Henry-Graves and LaRon Henry—filed caveats, alleging that Shirley exerted undue influence on Henry as to the making of the 2017 will. Shirley moved for summary judgment, which the probate court granted. Tenika and LaRon now appeal, arguing that summary judgment was not warranted because genuine issues of material fact remain as to whether the 2017 will was the result of Shirley's undue influence. For the reasons set forth *infra*, we agree and, thus, reverse.

Viewed in the light most favorable to the nonmovants,[1] the record shows that Tenika and LaRon are the adult children from Henry's first marriage; and on October 22, 2007, Henry executed a will in which he bequeathed the entirety of his estate to them, leaving nothing to his former wife. A few years later, on October 10, 2011, Henry married Shirley; but prior to doing so, he drafted an antenuptial agreement, which she executed.

Several years after his marriage to Shirley, Henry suffered a debilitating spinal cord injury, which confined him to a wheelchair and rendered him unable to care for most of his everyday needs. Consequently, Shirley—who worked full time as an accountant—hired personal caregivers to provide daily assistance for Henry. One of those caregivers, Charity Graham, began assisting Henry several days each week in July 2017, and her responsibilities included preparing meals, administering medication, bathing Henry, and providing transportation if Henry required it.

On October 18, 2017, Henry executed a new will at the offices of his attorney and in front of two uninterested witnesses, in which he named his friend, Charles Eberhardt, and Shirley as co-executors of his estate. In addition, the new will

---

[1] *See, e.g.*, *Milbourne v. Milbourne*, 301 Ga. 111, 112 (799 SE2d 785) (2017) (noting that on summary judgment, evidence is viewed in favor of the nonmovant).

2

rescinded the antenuptial agreement, bequeathed 80 percent of the interest derived from his company and real estate in Kentucky to Shirley, and bequeathed the remaining 20 percent to Tenika and LaRon. For the remainder of his estate, including any bank accounts, he bequeathed 80 percent to Tenika and LaRon and 20 percent to Shirley.

Henry passed away on January 31, 2018, and several weeks later, Shirley filed a petition to probate the 2017 will in solemn form in the Probate Court of Fulton County. Shortly thereafter, Tenika and LaRon filed a caveat to the will, alleging that Shirley procured it by exerting undue influence over Henry. Discovery then ensued, and one year later, Shirley filed a motion for summary judgment, alleging that Tenika and LaRon failed to produce any evidence in support of their claim that the 2017 will was the result of her undue influence over Henry. Tenika and LaRon filed a response, arguing that genuine issues of material fact existed as to the issue of undue influence. And in support of their response, Tenika and LaRon filed affidavits from Charity Graham (Henry's caregiver) and James Haynes (one of Henry's longtime friends). In those affidavits, both Graham and Haynes averred that Shirley was cruel to Henry in the months leading up to the execution of the 2017 will and thereafter. Indeed, according to Graham and Haynes, Shirley's actions toward Henry made him fear for

3

his own safety and want to leave her. Both further averred that Henry felt pressured to execute a new will despite having no desire to do so. Nevertheless, the probate court granted summary judgment for Shirley. This appeal follows.

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[2] Importantly, if the movant meets this burden, the nonmovant "cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue."[3] And speculation which "raises merely a conjecture or possibility is not sufficient to create even an inference of fact for consideration on summary judgment."[4] Furthermore, if summary judgment is granted, it enjoys no presumption of correctness on appeal, and an appellate court must satisfy itself that the requirements of OCGA § 9-11-56 (c) have been met.[5] In conducting this *de novo*

---

[2] OCGA § 9-11-56 (c).

[3] *Handberry v. Manning Forestry Svcs., LLC*, 353 Ga. App. 150, 151-52 (836 SE2d 545) (2019) (punctuation omitted).

[4] *Id.* at 152 (punctuation omitted).

[5] *See Cowart v. Widener*, 287 Ga. 622, 624 (1) (a) (697 SE2d 779) (2010) ("Summary judgments enjoy no presumption of correctness on appeal, and an

review, we are charged with "viewing the evidence, and all reasonable conclusions and inferences drawn from the evidence in the light most favorable to the nonmovant."[6] Bearing these guiding principles in mind, we turn now to Tenika and LaRon's specific claims of error.

1. Tenika and LaRon contend the probate court erred in granting summary judgment to Shirley, arguing that genuine issues of material fact remain as to whether the 2017 will was the result of Shirley exerting undue influence over Henry.[7] We agree.

---

appellate court must satisfy itself de novo that the requirements of OCGA § 9-11-56 (c) have been met.").

[6] *Benefield v. Tominich*, 308 Ga. App. 605, 607 (1) (708 SE2d 563) (2011) (punctuation omitted); *see Milbourne*, 301 Ga. at 112 n.1 (noting that in reviewing the grant of summary judgment by a probate court, appellate courts "conduct a de novo review of the evidence to determine whether a genuine issue of material fact exists, and whether the undisputed facts, when viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law").

[7] Tenika and LaRon also contend the probate court erred by weighing the evidence and making factual findings rather than merely determining if genuine issues of fact existed on the issue of undue influence by Shirley over Henry. But this contention is a distinction without any real difference from their initial enumeration, especially given that the remedy they seek for both claims of error is that the matter be resolved by a jury following trial.

OCGA § 53-4-12 provides that "[a] will is not valid if anything destroys the testator's freedom of volition, such as . . . undue influence whereby the will of another is substituted for the wishes of the testator." Consequently, to invalidate a will, "undue influence must amount to deception or coercion that destroys the testator's free agency."[8] But the question of undue influence is "generally for the factfinder."[9] And as is always the case in the summary-judgment context, in determining the validity of a will, it "is proper only if, construing the evidence most favorably for the nonmoving party, no genuine issue of material fact remains as to whether the will was the product of undue influence."[10] As to the form of such evidence, our Supreme Court has explained that "the existence and effective power of undue influence can rarely be shown except by circumstantial evidence."[11] Thus, an attack on a will as "having been obtained by undue influence may be supported by

---

[8] *Johnson v. Burrell*, 294 Ga. 301, 302 (2) (751 SE2d 301) (2013) (punctuation omitted); *accord Amerson v. Pahl*, 292 Ga. 79, 80 (2) (734 SE2d 399) (2012).

[9] *Milbourne*, 301 Ga. at 116 (III) (punctuation omitted); *accord Bean v. Wilson*, 283 Ga. 511, 512 (1) (661 SE2d 518) (2008).

[10] *Milbourne*, 301 Ga. at 116 (III).

[11] *Id.* (punctuation and emphasis omitted); *accord Dyer v. Souther*, 272 Ga. 263, 264 (2) (528 SE2d 242) (2000).

a wide range of testimony, including evidence of a confidential relation between the parties, the reasonableness or unreasonableness of the disposition of the testator's estate, old age, or disease affecting the strength of the mind."[12]

Here, in its order granting summary judgment in favor of Shirley, the probate court found that Tenika and LaRon presented no evidence that Henry was subjected to undue influence when executing his 2017 will. But that assertion is belied by, at the very least, the circumstantial evidence outlined in the affidavits Tenika and LaRon submitted with their response to Shirley's motion for summary judgment.

In the affidavit of Charity Graham (who was one of Henry's caregivers), she avers that Henry and Shirley's relationship was strained. Specifically, Graham claims Henry confided to her that, despite his pleas for assistance due to his physical impairment, Shirley would not help him bathe, administer his medication, or assist him with getting into bed in the evening. She also averred that Henry was under a enormous amount of stress in the months leading up to the execution of the new will because of the way Shirley treated him. Indeed, Graham contends Henry broke down emotionally in front of her and stated that he wanted to divorce Shirley. She further

---

[12] *Milbourne*, 301 Ga. at 116 (III) (punctuation omitted); *accord Dyer*, 272 Ga. at 264-65 (2).

7

claims that Henry told her Shirley was pressuring him to change his will but that he did not want to do so, and that in the days after he begrudgingly went to his attorney's office to execute the new will, he had Graham drive him around to look for a separate residence from Shirley because of how badly she was treating him. Similarly, Haynes—a longtime friend of Henry's—averred that Henry told him Shirley wanted Henry to change his will despite him not wanting to reduce the devise to his children. Additionally, Haynes claims that, although he needed constant care because of his poor physical condition, Henry wanted to move out of the home he shared with Shirley. Specifically, Henry confided to Haynes that Shirley's treatment of him made him fear for his personal safety.

Discussing these affidavits in its order, the probate court noted that Henry's physical impairment did not demonstrate that he was incapable of executing a will or understanding his bequests. But Tenika and LaRon do not claim Henry lacked testamentary capacity; rather, they contend circumstantial evidence exists that demonstrates Henry's decision to change his will at Shirley's behest was the result of his fear for his own personal safety if he did not do so. The probate court's order also found that Tenika and LaRon presented no evidence that Shirley was present in the room on October 18, 2017, when Henry executed the new will, and thus, there

8

was no evidence of direct pressure by her at that time. But this myopic assessment ignores our admonition that "evidence as to the facts and circumstances that occurred before and after the execution of the documents at issue may be considered by the trier of fact when determining whether undue influence existed at the time the documents were executed."[13] Furthermore, although the probate court dismissively characterized some of the averments concerning Shirley's treatment of Henry as "unprofessional" or "unpleasant," the Supreme Court of Georgia has expressly noted that evidence of character is relevant when the grounds for a caveat include undue influence.[14]

In this case, the facts viewed in the light most favorable to Tenika and LaRon[15] demonstrate that—leading up to the execution of the new will—Henry and Shirley

---

[13] *Slosberg v. Giller*, 341 Ga. App. 581, 582 (1) (801 SE2d 332) (2017) (emphasis supplied); *Knox v. Knox*, 213 Ga. 677, 679-80 (2) (101 SE2d 89) (1957) (holding jury instruction that issues as to undue influence related to date of paper offered for probate, evidence as to fact and circumstances about other times, both before and after, might be considered for what light that evidence might throw upon that particular time was proper).

[14] *See Bryan v. Norton*, 245 Ga. 347, 349 (3) (265 SE2d 282) (1980) (holding that "evidence of the bad character of the propounder should be admissible where the grounds of the caveat are fraud and undue influence").

[15] *See supra* note 10.

(as husband and wife) were in a confidential relationship; Henry was dependent on Shirley for much of his care because of his severe physical impairment; Henry feared for his own safety because of Shirley's treatment of him and apparently wanted to move; and Shirley wanted Henry to change his will despite his expressed desire not to do so. Suffice it to say, all of the foregoing amounts to—at the very least—circumstantial evidence that Henry changed his will as a result of Shirley's undue influence over him. So, given these circumstances, and mindful of the our Supreme Court's explicit directive that "the question of undue influence is generally for the factfinder[,]"[16] we conclude the probate court erred in granting summary judgment in favor of Shirley.[17] Accordingly, we reverse the probate court's ruling.

[16] *Milbourn*, 301 Ga. at 116 (III) (punctuation omitted); *accord Bean*, 283 Ga. at 512 (1).

[17] *See Milbourne*, 301 Ga. at 117 (III) (affirming denial of summary judgment given that beneficiary's position as testator's guardian; her emotional control over testator, who had suffered brain damage; her extensive budgetary requests; her statement that it was her turn to get paid; and her role in the creation of the will created genuine issues of material fact that beneficiary exerted undue influence); *Cook v. Huff*, 274 Ga. 186, 186-88 (1) (552 SE2d 83) (2001) (holding that evidence supported jury finding that will executed by testator shortly before his death and after he suffered a stroke, which contained provisions more generous to his wife, and less beneficial to his children from an earlier marriage, than provisions in his prior will, resulted from undue influence on wife's part in light of hostility between wife and children, wife's encouragement for him to draft a new will, and testator's poor medical condition); *Mathis v. Hammond*, 268 Ga. 158, 160 (3) (486 SE2d 356) (1997)

10

2. In a separate filing, Shirley moves this Court, under Court of Appeals Rule 7 (e) (2), to impose sanctions upon Tenika and LaRon for filing a frivolous appeal. But given our holding in this matter, we obviously disagree with this characterization.[18] Consequently, Shirley's motion for sanctions is denied.

*Judgment reversed. Mercier and Markle, JJ., concur.*

---

(concluding that evidence of a confidential relationship between the grantor and the grantees; advanced age of the grantor; grantor's terminally ill physical condition; grantor's living arrangement; and evidence of grantor's reliance on the grantees, especially the daughter with whom she was residing, for care, shelter and transportation, was sufficient to present the issue of undue influence to the jury and deny directed verdict); *Slosberg*, 341 Ga. App. at 582-83 (1) (reversing grant of summary judgment on issue of undue influence because appellant presented circumstantial evidence that appellees tried to control father suffering from memory impairment, father stated he felt like he was being brainwashed to change documents, and because trial court improperly limited the scope of evidence to the time periods in which the father executed the challenged documents). *Cf. Johnson*, 294 Ga. at 305 (2) (holding that the probate court's grant of summary judgment to propounder on the issue of undue influence was proper given that both of the caveators admitted that they were not aware of any evidence that propounder had done anything wrong to testator or any particular act to unduly influence him).

[18] *See In re Estate of Hill*, 340 Ga. App. 49, 43 (795 SE2d 748) (2016) (denying appellee's motion for frivolous appeal in light of reversal of trial court's grant of summary judgment in favor of appellee).