**FIFTH DIVISION**
**MERCIER, C. J.,**
**MCFADDEN, P. J., and RICKMAN, J.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**September 23, 2024**

# In the Court of Appeals of Georgia

A24A0986. ESTATE OF BUTLER v. PATTERSON et al.

RICKMAN, Judge.

This case involves several transactions regarding transfers of money and property of the decedent, Alva Patterson Butler to her brother and nephew, Kenneth and Sheldon Patterson. The Estate of Alva Patterson Butler through its administrator, Traci Cunningham, the decedent's daughter, filed suit against the Pattersons challenging the transfers as void due to undue influence, conversion, breach of fiduciary duty, and fraud. The Pattersons filed a motion for summary judgment, which was granted by the trial court. On appeal, Cunningham contends that the trial court erred by granting the Pattersons' motion for summary judgment. We agree and reverse.

"Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Citation and punctuation omitted.) *In re Estate of Henry*, 366 Ga. App. 638, 639 (883 SE2d 855) (2023). Furthermore, if summary judgment is granted, it enjoys no presumption of correctness on appeal, and an appellate court must satisfy itself that the requirements of OCGA § 9-11-56 (c) have been met. Id. "In conducting this *de novo* review, we are charged with viewing the evidence, and all reasonable conclusions and inferences drawn from the evidence in the light most favorable to the nonmovant." (Citation and punctuation omitted). Id. at 639-640 (883 SE2d 855) (2023).

So viewed, the evidence showed that Cunningham was the decedent's only child. During her life, the decedent was a banker and had, along with her deceased husband, accumulated money and property. Beginning in 2018, the decedent's nephew, Bradd Parker averred that he began to notice "signs of mental deterioration" in the decedent. By mid-2020 the decedent's "decline became significant and was

impossible to ignore." Parker further averred that the decedent "had a total change in personality."

The branch manager at First Bank of Dalton deposed that sometime before February 2021, the decedent came in the bank by herself, checked her balance and then stated, "I just want to make sure nobody took my money out of my account." Cunningham averred that "[i]n late 2020 . .. I had serious concerns for [the decedent's] mental capacity, [the decedent] believed that Kenneth [Patterson] wanted to take her house, and she wanted to put the house in my name to prevent him from doing so."

Cunnigham and Parker became concerned about the decedent's ability to care for herself. Parker contacted Kenneth Patterson to see if he could help care for the decedent. Initially, Kenneth Patterson expressed reluctance about helping, but then agreed. Kenneth Patterson hired helpers to assist with the decedent and installed cameras outside the decedent's house. The decedent gave Kenneth Patterson one of her checkbooks.

In January 2021, Kenneth Patterson contacted a legal assistant at a law firm and indicated that the decedent wanted to transfer her property to himself and Sheldon.

On January 15, 2021, the decedent and the Pattersons came into the legal assistant's office. The legal assistant deposed that she explained to the decedent that she had prepared deeds transferring her property to the Pattersons because Kenneth called and expressed that the decedent wished to transfer her property to him and Sheldon. The decedent agreed and signed the deeds. No attorney was present for the transfer of the property. Five days later, the decedent signed over all of her vehicles to the Pattersons.

Cunningham was unaware that anyone else had interest in the decedent's fiances and asked her mother to give her power of attorney so that she could help her with her finances. The decedent also added Cunningham to one of her bank accounts and told a banker that she needed help managing her accounts.

On February 8, 2021, Cunningham took the decedent to the doctor to address her declining mental state. The doctor performed a "mini mental status exam" and he deposed that "she was doing poorly, very poorly." The doctor ended up stopping the exam because of the decedent's poor performance. The doctor explained that the decedent "wasn't oriented [to] place or time. She didn't know what the building was or what time of the year was or the date. . . . [S]he knew who she was, but that was

4

about it." The doctor's diagnosis was Alzheimer's which was ultimately confirmed by a neurologist.

Four days following the doctor's visit, the Pattersons took the decedent to several banks and transferred money from her accounts into accounts controlled by the Pattersons. On February 19, 2021, the decedent had another doctor's visit. The doctor deposed that she was "still confused" and that it was "likely she probably wouldn't have been . . . in her best state of mind to [execute documents]" on the date of the appointment.

Later that day, the Pattersons took the decedent to another bank. The decedent indicated that she wanted to open an account with her name and the Pattersons names on it. The decedent's individual account was then closed and all of the money previously in that individual account was transferred to the joint account with the Pattersons. At some point later, Kenneth came back to the bank and closed the joint account and transferred the money to an account that just had the Pattersons' names on it.

Eventually Cunningham became suspicious of the Pattersons because the decedent told her "on several occasions that 'those men' are taking me to the banks

and taking all of my money and they are coming to get my vehicles." When Cunningham discovered that the decedent had signed her property and land over to the Pattersons, she spoke to the decedent about it and the decedent "immediately began crying and became very upset."

Kenneth Patterson ultimately placed the decedent in a nursing home, informing Cunningham after that he had made the decision and moved her furniture into the facility. The decedent died shortly after.

Cunningham filed suit against the Pattersons challenging the transfers of both money and property as void due to undue influence, conversion, breach of fiduciary duty, and fraud. The Pattersons filed a motion for summary judgment. At the hearing on the Pattersons' motion, the trial court told Cunningham's counsel that the evidence regarding the decedent's severe dementia was "hearsay." When Cunningham's counsel explained that the decedent's diagnosis was not hearsay because of her doctor's testimony explaining that she was diagnosed with Alzheimer's, the trial court seemingly disregarded the testimony.

The trial court granted the Pattersons' motion for summary judgment concluding that it "does not find any evidence supporting the application of a

presumption of undue influence" and in "[c]onstruing the evidence most favorably for [Cunningham], the [trial court] finds no evidence to support [undue influence and fraud] and that no genuine issue of material fact remains as to whether undue influence existed." The trial court concluded that [b]ecause the [trial court] finds no evidence of undue influence in this case, [Cunningham's] claim for undue influence fails." Additionally, the trial court found that "[b]ecause [Cunningham's] undue influence claim fails, [Cunningham's] [f]raud and [c]onversion claims fail as a matter of law."

Cunningham contends that the trial court erred by granting the Pattersons's motion for summary judgment. We agree.

"Generally, the question of undue influence is for the factfinder." (Citation and punctuation omitted.) *Welborn v. Welborn*, 295 Ga. App. 661, 662 (673 SE2d 44) (2009). "Undue influence may be shown by circumstantial evidence as well as by direct evidence, and slight evidence of fraud and undue influence may authorize the jury to cancel the deed." (Citation and punctuation omitted.) *Mathis v. Hammond*, 268 Ga. 158, 160 (3) (486 SE2d 356)(1997). Our Supreme Court has held that,

> [e]vidence of a confidential relationship between the grantor and the grantees; the advanced age of the grantor; the grantor's terminally ill

physical condition; the grantor's living arrangement; and evidence of the grantor's reliance on the grantees, especially the daughter with whom she was residing, for care, shelter and transportation was sufficient to present the issue of undue influence to the jury.

Id.

Here, in its order granting summary judgment, the trial court inexplicably found that there was no evidence of undue influence. That assertion, however, is belied by the record. There was plenty of evidence, including testimony from the decedent's doctor, that the decedent was of an advanced age, relied upon the Pattersons for care, was suffering from advanced dementia and Alzheimer's, and that there existed a confidential relationship between the decedent and the Pattersons. There was even evidence that days after the decedent had a doctor's appointment in which the doctor opined she was not oriented to time or place, the Pattersons took her to banks and transferred money from her to them. Even more compelling, there was evidence that on the exact same day as another doctor's appointment where the decedent was still confused and the doctor opined that she was likely not in the best state of mind to execute documents, the Pattersons took the decedent to another bank and transferred

all of her money from her account at the bank to a joint account with their names on it and later took her name off of that account.

When considering the evidence in the light most favorable to Cunningham, the trial court erred by finding there was no evidence of undue influence and thus granting summary judgment to the Pattersons on all counts.[1] Because genuine issues of material fact relevant to the issue of undue influence exist, we reverse the trial court's grant of summary judgment. See *Milbourne v. Milbourne*, 301 Ga. 111, 118 (III) (799 SE2d 785) (2017) (holding that the trial court did not err in denying a motion for summary judgment where there was evidence that a confidential relationship existed between the beneficiary and the testator, that the beneficiary exercised a great deal of control over the testator, and that the beneficiary may have actively taken part in the planning and execution of a will); *Mathis*, 268 Ga. at 160 (3) (where our Supreme Court held

---

[1] In response to the Pattersons' motion for reconsideration, we note that at the hearing on their motion for summary judgment, Cunningham stated that she was no longer pursuing her breach of fiduciary duty claim. However, after the hearing, but before the trial court ruled on the Pattersons' motion for summary judgment, the parties submitted post-hearing briefs to the trial court and in her brief, Cunningham clearly argued that the Pattersons' breached their fiduciary duty to the decedent. In addition, Cunningham never dismissed her breach of fiduciary duty claim. Under the circumstances, we disagree with the trial court's conclusion that Cunningham affirmatively abandoned her claim.

that there existed a jury question as to whether a transfer of property was the product of undue influence).

*Judgment reversed. Mercier, C. J., and McFadden, P. J., concur.*